**GENERAL ELECTRIC COMPANY,**
Plaintiff,

v.

**BOOTZ MANUFACTURING COM-
PANY, Inc., Defendant.**

**Raymond Murphy, Vernon Sallee, et al.,
On Behalf of Local 215, International
Union of Teamsters, Chauffeurs and
Helpers of America, Intervenors.**

No. EV 68-C-72.

United States District Court
S. D. Indiana,
Evansville Division.

Aug. 13, 1968.

Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., for plaintiff.

McCray, Clark, Statham & McCray, Evansville, Ind., for defendant.

Denton & Gerling, Winfield K. Denton, Gary L. Gerling and Rodney H. Grove,

Evansville, Ind., for intervening petitioners.

## MEMORANDUM OPINION

DILLIN, District Judge.

Heretofore, on August 8, 1968, the plaintiff filed in this court its complaint for replevin, alleging that it was the owner and entitled to the immediate possession of certain personal property held by the defendant, consisting of tools and equipment, manufactured parts, and raw material, all of the value of $33,000.00. It further alleged that prior to the commencement of the action plaintiff had demanded possession of such personal property of and from the defendant, which demand was refused. The complaint was verified on information and belief, and, agreeable to the Indiana replevin statutes, Burns' Indiana Statutes, Section 3–2701 et seq, plaintiff filed an affidavit for immediate possession in the language of the statute, alleging, among other things, that said personal property was wrongfully and unlawfully detained by the defendant. Pursuant to such affidavit, and again in conformity with the Indiana statutes,[1] the clerk of this court issued a writ, ordering the United States Marshal to seize the property, and to deliver it to the plaintiff under certain circumstances.[2]

On August 9, 1968, the intervenors filed their verified petition to intervene in the action, alleging that the same was collusive, and brought for the sole purpose of using this court and the United States Marshal as an agency for obtaining the delivery of the property from the defendant to the plaintiff, such parties being unable or unwilling to effect the delivery thereof as between themselves by reason of a strike to the plant of the defendant brought by the members of Local 215 employed at such plant. The relief prayed for by the intervenors was that execution of the writ of replevin be stayed. The court, in an ex parte proceeding, granted the petition to intervene, entered a temporary order staying the United States Marshal from executing the writ, and assigned the matter for hearing on August 14, 1968, on the issue of whether or not the temporary stay should be made permanent.

At the hearing, the plaintiff and defendant each appeared by counsel, and the intervenors appeared in person and by counsel. From the evidence heard, I make the following findings of fact:

1. Burns' Indiana Statutes "3–2702. The plaintiff may, at the time of issuing the summons, or at any time before answer, claim the immediate delivery of such property, as provided in this act; when a delivery is claimed, an affidavit must be made by the plaintiff, or by some one in his behalf, showing:

   First. That the plaintiff is the owner of the property, or that he is then lawfully entitled to the possession thereof and particularly describe it.

   \*     \*     \*     \*     \*

   Third. That the property has been wrongfully taken and is unlawfully detained by the defendant, or is unlawfully detained; \* \* \*."

   "3–2703. When such affidavit is filed with the clerk, he shall issue an order for the seizure of the property, and delivery thereof to the plaintiff."

   "3–2704. The order shall be directed and delivered to the sheriff. \* \* \*"

2. Burns' Indiana Statutes "3–2705. The sheriff shall forthwith proceed to execute the order, by taking possession of the property described in the affidavit, \* \* \* and if the defendant, \* \* \* within twenty-four [24] hours thereafter, shall execute a written undertaking, payable to the plaintiff, with sufficient surety, to be approved by the sheriff, to the effect that the defendant shall safely keep the property, that the same shall not be in any way injured or damaged, and that he will deliver the same to the plaintiff, if judgment should be rendered to that effect, and also that he will pay to the plaintiff all such sums of money as he may recover in the action, then the sheriff shall deliver the property to the defendant. But if such undertaking is not given within the time aforesaid, then the sheriff shall deliver the property to the plaintiff, on receiving from him, \* \* \* within twenty-four [24] hours thereafter, a written undertaking, payable to the defendant, with sufficient surety, to be approved by the sheriff, to the effect that the plaintiff will prosecute his action with effect, \* \* \*."

Defendant's employees went on strike July 1, 1968, and since that time defendant's manufacturing operations have been completely shut down. Peaceful picketing has taken place since the beginning of the strike. Various customers of defendant, including plaintiff and other manufacturing concerns, have been desirous of obtaining manufactured items, work in process, raw materials, dies, tools and fixtures from the struck plant, but have been unwilling to cross the picket line. Common carriers by truck have been unwilling to cross the picket line. All of such property, excepting a part of the tools, dies and fixtures, is the property of defendant until delivered to its customers, and defendant's possession of the nonowned tools, dies and fixtures is lawful. There has been no bona fide antecedent demand for, nor wrongful refusal of delivery of any of the items.

In order to effect the delivery of the above items to its customers, without either party appearing to cross the picket lines, the defendant and its customers, including plaintiff, agreed to a scheme suggested by defendant's counsel. The scheme contemplated that a customer would file a replevin action in an appropriate State or Federal court, asserting its own ownership and right to immediate possession of the personal property it wanted to obtain, that defendant would promptly answer and agree to entry of judgment for its customer, and that thereafter the Sheriff or Marshal would perforce be required to cross the picket line, pick up the items, and deliver them pursuant to a writ of replevin. Alternatively, the plaintiff-customer would file an affidavit for immediate possession, post the appropriate bond, and secure the same result even before entry of judgment. This plan was actually put into successful operation in five separate State court cases over a period of about three weeks prior to the filing of this action! Such an action is the one here under scrutiny.

## Conclusions of Law

■ Prior to the commencement of the hearing, plaintiff moved to dismiss the intervening petition for want of jurisdiction, primarily on the basis that intervenors had no interest in the subject matter of the action. The motion was overruled, as it is my opinion that Rule 24(a)(2), Federal Rules of Civil Procedure, is broad enough to support intervention as a matter of right. Although it is true that the intervenors had and claimed no interest in the specific personal property described in the complaint, it seems to me that the local union, and the intervenors, as representative of it, certainly had an interest in the transaction which is the subject of the action, namely, the transfer of possession of the described personal property from the defendant to the plaintiff.

The tie-up of material in the defendant's plant represented a substantial economic advantage to the union in conducting its strike. Certainly a "transaction" whereby officers of the court would be required to transport such material through the picket line by reason of collusion between purely nominal adversaries would constitute a transaction in which the union, and its representatives, would have a legally cognizable interest. Just as apparently, the union was so situated that the disposition of the action in the manner contemplated by such nominal adversaries would, as a practical matter, impair or impede its ability to protect that interest. Once the material was removed from the plant the union's economic leverage would be diminished, but it is difficult to see how such a harm could be accurately assessed and compensated for in money damages.

■ Even if the intervenors had no legal right to intervene, however, this court would nevertheless have the inherent power to inquire into the matters raised by their verified petition in order to prevent the abuse of its process. A court would be remiss in its duty were it to ignore such a charge after the same

had been formally lodged on the record in the form of a petition under oath, as was the situation here.

Going, then, to the merits of the intervening petition, it is apparent that upon the basis of the facts as found the scheme devised by the defendant, and participated in by plaintiff herein, is nothing more nor less than an attempted fraud upon this court. This is not to say that agreed judgments may not be entered in a proper case. In this action, however, there was no bona fide case or controversy as between plaintiff and defendant; rather, the sole motive for its filing was to subvert the process of the court, and to misuse its officers for the private advantage of the nominal litigants as against the union, a nonparty to the suit. Further, the scheme was necessarily dependent for success upon the filing of a complaint and affidavit which simply were not true.

 I have been cited no case which is precisely like this one on its facts, perhaps because of the salutory effects of Rule 11, Federal Rules of Civil Procedure, and similar state court rules as they pertain to the effect of the signatures of attorneys on pleadings. Such lack, however, presents no obstacle to the exercise of equity jurisdiction, as prayed for by petitioners. "There is a maxim that: 'Equity will not suffer a wrong to be without a remedy,' and * * * the jurisdiction of a court of equity does not depend upon the mere accident of the court having in some previous case, at some distant time, granted relief under similar circumstances. If it were so, equity would not have grown and developed." Dodd v. Reese, 1940, 216 Ind. 449, 24 N.E.2d 995, 128 A.L.R. 574.

It is fundamental that any court has the inherent power to prevent the abuse of its own process, and to prevent frauds upon its jurisdiction. It is perhaps unusual to determine such an issue at this stage of the proceedings, but this is an unusual case. "(It is) * * * the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties." 12 I.L.E., Equity, § 3, p. 269. Considering that plaintiff in this action had already filed its spurious affidavit for immediate possession at the time of the filing of the intervening petition, and considering also the existing scheme whereby the defendant would fail to resist the immediate delivery of the goods by the Marshal, it is apparent that intervening petitioners' necessity for relief is now. Alternatively, even if intervenors should ultimately be adjudged to be without standing to intervene, this court has a right to prevent itself from being stultified by the collusive suit of the original parties plaintiff and defendant.

Accordingly, it is considered and ordered that the writ of replevin heretofore issued by the Clerk be, and the same is set aside and held for naught, and the Marshal is permanently enjoined from executing the same.