380 A.2d 1245

Merrill TAUB and Anthony H. Harwood, Trustees for Institutional Investors Trust, Appellants,

v.

John W. MERRIAM and Thomas Wynne, Incorporated, Joint Venturers t/a Cedarbrook Joint Venture, Cedarbrook Realty, Inc., Witchwood, Inc., John W. Merriam and the Fidelity Bank.

John W. MERRIAM

v.

CEDARBROOK REALTY, INC., Witchwood, Inc., and Cedarbrook Joint Venture, Merrill Taub and Anthony H. Harwood, Trustees for Institutional Investors Trust, Appellants.

Superior Court of Pennsylvania.

Argued March 24, 1977.

Decided Dec. 2, 1977.

Henry W. Sawyer, III, Philadelphia, with him David P. Bruton, Philadelphia, for appellants.

Jeffrey A. Less, Philadelphia, with him Morris Gerber, Norristown, for appellees, Merriam & Wynne, Inc., Joint Ventures t/a, and John W. Merriam.

Alfred H. Wilcox, Philadelphia, with him John D. Dunmire, Norristown, for appellee, The Fidelity Bank.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and VAN der VOORT, JJ.

JACOBS, Judge:

This appeal arises from the denial of appellant Institutional Investors Trust's (hereinafter IIT) petition seeking to intervene in execution proceedings against four tracts of land and to stay execution. The order appealed from also denied appellant's request for a preliminary injunction against the sheriff's sale proceeding. Both petitions for relief were denied by the court below on the basis that the

issues raised were res judicata; the preliminary injunction was refused for the additional reason that appellant has an adequate remedy at law. The first issue for our determination is whether appellant was properly precluded from the relief it sought by principles of res judicata. For the reasons that follow, we hold that it was not, and therefore reverse the order of the lower court.

On December 14, 1973, IIT loaned $16,800,000 on a non-recourse basis to Cedarbrook Joint Venture, Cedarbrook Realty, Inc., and Witchwood, Inc. (hereinafter the Cedarbrook Companies). Four separate notes and mortgages evidencing the aggregate loan amount were executed, and each mortgage encumbered all four tracts of land owned by the Cedarbrook Companies.[1] As additional security for the loans, the Cedarbrook Companies provided a $5,000,000 letter of credit from The Fidelity Bank (hereinafter Fidelity), for which a second mortgage on other realty in Philadelphia could be substituted.

The foregoing loan structure was subsequently altered in November, 1974. IIT had pledged its interest in the loans as well as the $5,000,000 letter of credit to Chemical Realty Corporation (hereinafter CRC) as collateral for loan advances from CRC to IIT. When CRC expressed doubts about the letter of credit, CRC, Fidelity and IIT executed a Participation Agreement providing that the $5,000,000 letter of credit would be replaced by a commitment from Fidelity to purchase, in the event of default, a $5,000,000 junior share of the $9,000,000 Apartment House loan. The Participation Agreement also provided that if Fidelity were required to purchase this $5,000,000 share, it could also purchase the $4,000,000 senior share of the loan, and thereby become sole owner of the $9,000,000 loan. Additionally, this $9,000,000

---

1. The loans, and the order of recording of the mortgages, were as follows:

| | |
|---|---|
| a) Shopping Center Loan | $2,500,000 |
| b) Witchwood Loan | 2,350,000 |
| c) Country Club/Vacant Land Loan | 2,950,000 |
| d) Apartment House Loan | 9,000,000 |

lien was made senior to the other three notes and mortgages by the terms of a Subordination and Lien Modification Agreement executed with the Participation Agreement.

Within the next twelve months, the four loans fell into default, and Fidelity honored its obligation to purchase the $5,000,000 share of the Apartment House Loan. At the same time, Fidelity exercised its option to purchase the remaining $4,000,000 share of that note, and assigned the senior $9,000,000 note and mortgage to Merriam.[2]

On May 28, 1976, IIT confessed judgments against the Cedarbrook Companies on the three mortgage notes it had retained, and one month later, Merriam entered judgment by confession on the senior $9,000,000 note.[3] This action by Merriam thereupon initiated the procedural posturing leading to the present appeal.

Merriam filed a writ of execution directing the sheriff to sell all four tracts of land encumbered by the $9,000,000 mortgage, and scheduled the sale for August 18, 1976. On August 6, 1976, IIT petitioned to intervene in the Merriam confession of judgment under Pa.R.C.P. 2327(4), seeking to strike or open the judgment or alternatively to amend the writ of execution. IIT essentially argued that 1) assignment of the senior $9,000,000 note and mortgage from Fidelity to Merriam extinguished the note and mortgage, and 2) Merriam was prohibited from executing on two of the four tracts scheduled for sheriff's sale by virtue of paragraph 19 of the Participation Agreement.[4] After briefs and argu-

2. These terms were permitted by the Participation Agreement.

3. Paragraph 2(e) of the Participation Agreement required IIT or CRC to foreclose upon default, after written request from Fidelity.

4. Paragraph 19 provides:
 19. Notwithstanding that the mortgages which secure the CRC Loans encumber the Witchwood Tract and the Vacant Land Tract, as well as the Shopping Center and the Apartments (as such tracts or improvements are defined in the Note Purchase Agreement), CRC and Fidelity, for themselves, their successors and assigns, agree that in the event they or either of them foreclose on the CRC Loans or either of them, the foreclosure proceedings or execution proceedings shall involve only the Shopping Center and/or the

ment, the lower court, on November 9, 1976, denied IIT's petition to intervene and permitted execution to proceed. The four tracts of land were relisted for sheriff's sale to be held January 19, 1977.

However, on December 29, 1976, IIT filed a second petition for leave to intervene to seek a stay of execution pursuant to Pa.R.C.P. 3121(b). At the same time, IIT filed an equity complaint against Merriam, the Cedarbrook Companies, and Fidelity, seeking, among other things, a preliminary injunction against the sheriff's sale of two of the tracts of land. Once again the lower court received briefs and heard argument, and once again the lower court denied intervention. Holding that res judicata barred IIT from relief, the court issued orders on January 17, 1977, denying intervention, the stay of execution, and the preliminary injunction.

IIT immediately appealed to this Court, and on January 19, 1977, Judge SPAETH stayed the sheriff's sale of the two tracts of land until February 16, 1977, conditioned upon the posting of a $250,000 supersedeas bond by IIT. IIT filed the bond, as well as a petition for extension of the stay pending disposition of these appeals, and on February 15, 1977, Judge HOFFMAN ordered extension of the stay of execution subject to continuation of the $250,000 bond. Merriam appealed this stay order to our Supreme Court, and on February 16, 1977, Justice NIX entered an order denying relief.

I

 We are thus initially presented with the question of whether the lower court's denial of appellant's first petition for leave to intervene was res judicata as to the second petition. It is essential to note at this juncture that this case does not involve the usual res judicata situation, i. e., the termination of litigation with a final judgment and

Apartments and shall not involve the Witchwood Tract and/or the Vacant Land Tract.
Record at 90(a).

the subsequent initiation of litigation on the same cause of action. Rather, the situation presented by the facts of this case is the process of one on-going cause of action, the Merriam confession of judgment, interrupted by two motions for intervention before final determination. The standard for our initial analysis is therefore the legal principle that the doctrine of res judicata does not apply to a decision on a motion with the same strictness as to a judgment, and accordingly, that an order made in a pending action on a motion involving merely a question of practice, or appealing to the discretion of the trial court, is not an adjudication barring a subsequent motion or application on the same ground.[5] By this standard, the second petition for intervention was not barred, because the question of intervention is a matter within the sound discretion of the trial court. *Darlington v. Reilly*, 363 Pa. 72, 76, 69 A.2d 84 (1949).

Another statement of the test appears in *In Re Walton Hotel Co.*, 116 F.2d 110 (7th Cir. 1940). There the court said:

[D]ecisions on motions do not necessarily have the force of res adjudicata. Courts possess discretion to permit a second application. Whether such renewal shall be entertained depends upon the circumstances of the case; for courts have the power to prevent vexatious and repeated pleadings upon the same point and ordinarily exercise their discretion to preclude reagitation of the same question on the same state of facts. These rules have their origin in the necessity of orderly conduct of business. 116 F.2d at 112.[6]

In *Walton*, the court denied a second application to set aside an order approving a lease in reorganization proceedings because the petitioners failed to show new facts or new question of law in their second application for relief. In the present case, however, IIT sought intervention on different

5. *See* 2 Standard Pennsylvania Practice § 54, pp. 500–01 (1956); 56 Am.Jur.2d *Motions, Rules and Orders* § 30 (1971).

6. *See also* 2 Freeman, Judgments § 669, pp. 1408–1409 (1925).

grounds in its second petition for leave to intervene,[7] and therefore made a sufficient showing to allow a determination of its second petition on its merits.

Apart from these general statements of the law of res judicata as applied to motions, we are persuaded that the crucial determinative factor in our analysis is the appealability of the lower court's original order denying intervention.

[F]inal orders, or orders affecting substantial rights, fully litigated, and from which an appeal lies, are conclusive of the matter adjudged and, under the doctrine of res judicata, binding on the parties in all subsequent proceedings unless reversed or modified by an appellate court.

On the other hand, orders which are not final, or which are made on motions affecting matters which are only incidental or collateral to the determination of the main controversy, are not generally considered conclusive, or res judicata . . . .

60 C.J.S. Motions & Orders § 65g, pp. 115–116 (footnotes omitted).

■ This rule that res judicata does not apply to interlocutory determinations appears to be the law of our Commonwealth. *See, e. g., Creighan v. City of Pittsburgh,* 389 Pa. 569, 132 A.2d 867 (1957); *Ahrens v. Goldstein,* 376 Pa. 114, 102 A.2d 164 (1954).

In *Keyes v. Continental Casualty Co.,* 121 Pa.Super. 359, 183 A. 672 (1936), plaintiff procured an automobile liability insurance policy from defendant while living in Ohio. After plaintiff moved to Massachusetts, she procured a similar policy as required by state law. While both policies were in effect, plaintiff was involved in an auto accident which caused injury to a child. The Ohio insurer refused to defend, and the Massachusetts insurer settled with the child and its father. Thereupon the Massachusetts insurer sued

7. IIT sought intervention in the first instance to strike or open the judgment entered by Merriam against all four tracts. The second petition was filed pursuant to Pa.R.C.P. 3121(b), seeking a stay of execution against the Country Club/Vacant Land tract and the Witchwood Tract.

the Ohio insurer for one-half the settlement. Defendant filed its affidavit of defense and subsequently obtained a rule to show cause why the affidavit of defense should not be amended to plead the statute of limitations. The court discharged the rule, and when defendant later learned the date of settlement, it again moved to amend its affidavit of defense. The lower court denied amendment on the basis of res judicata. On appeal, this court held that defendant should have been permitted to amend, and stated that refusal on the basis of res judicata was clearly wrong, since the first order was interlocutory, and if defendant had appealed from it, the appeal would have been quashed.

We must therefore determine whether the lower court's order of November 9, 1976, denying intervention was interlocutory. Once again we start with the general proposition that

> While, as a rule, an appeal will not lie from an order refusing leave to intervene, because such order is not a final one, cases may arise where a denial of a petition to intervene would be a practical denial of relief to which the petitioner for intervention is entitled and can obtain in no other way; and in such cases the refusal to permit an intervention is a final order or decree as to the petitioner. *Frey's Estate*, 237 Pa. 269, 271, 85 A. 147, 148 (1912) (citations omitted).

Appellant did not appeal the first denial of intervention; we are convinced that this course of action was proper.[8] While

---

8. *Northampton Trust Co. v. Northampton Traction Co.*, 270 Pa. 199, 112 A. 871 (1921), is not to the contrary. In that case, holders of second mortgage bonds sought to intervene in receivership and foreclosure proceedings instituted by the first mortgagee, in order to raise the defense that no default on the obligation had occurred. Although the Supreme Court stated that intervention was improperly denied, it treated intervention as having been ordered, and went on to find that default had occurred. In accordance with the rule of *Frey's Estate*, the order denying intervention was appealable because it was deemed final as to the intervenor's rights, leaving no other recourse.

Appellees also cite the following language from *Northampton Trust* in support of their contention that execution should proceed:

IIT was entitled to permission to intervene because of its legal interest in the land parcels under execution, the court's refusal to permit intervention was not a denial of relief which IIT could obtain in no other way. At the very least, appellant was still entitled to seek relief under Pa.R.C.P. 3121(b) which it did. In fact, Fidelity opposed IIT's first petition to intervene on the basis that IIT had other available remedies to pursue.

██ We do not, however, regard appellant's second petition for leave to intervene in the same light. Once this petition was denied on res judicata grounds, IIT was denied the relief in the form of a stay of execution it sought, and was therefore entitled to bring this appeal. Appellees argue that alternative relief is available to IIT in equity, and in post-execution sale relief under Pa.R.C.P. 3136.[9] We cannot

> Ordinarily, assuming there are different trustees, junior creditors will not be permitted to intermeddle in litigation between plaintiff and defendant unless they show some injury to themselves: *Andrews v. Window Glass Co.*, 268 Pa. 565, 112 A. 90. That foreclosure will be detrimental to the holders of the second mortgage will not deprive the holders of the first mortgage of the right to proceed: *Dickerman v. Northern Trust Company*, 176 U.S. 181, 191, 20 S.Ct. 311, 44 L.Ed. 423; *Phila. Trust Co. v. Northumberland, etc., Co.*, 258 Pa. 152, 101 A. 970; *Columbia, etc., Co. v. North, etc., Co.*, 258 Pa. 447, 454, 102 A. 214.
>
> 270 Pa. at 205, 112 A. at 873.

We do not reach the same conclusion. The *Northampton* court emphasized the fact that an intervenor should be permitted to set up as a defense such circumstances as would lawfully preclude final judgment or decree, and disregarded procedural formalities to hear the merits of the case. *Northampton* cannot be relied on to prevent an eventual hearing on the merits of the case before us.

9. Pa.R.C.P. 3136 provides in pertinent part:

> Rule 3136. Distribution of Proceeds.
>
> (a) Not later than thirty (30) days after the sale of real property and not later than five (5) days after the sale of personal property, the sheriff shall prepare a schedule of proposed distribution of the proceeds of sale which shall be kept on file and shall be available for inspection in his office. No schedule of distribution or list of liens need be filed when the property is sold to the plaintiff for costs only.
>
> * * * * * *
>
> (d) The sheriff shall distribute the proceeds of sale in accordance with the proposed schedule of distribution, unless written excep-

agree. Equitable relief was unavailable to appellant and denied IIT by the court below, obviously precluding that alternative. Additionally, we regard the post-sale exception procedure outlined in Rule 3136 as an entirely different form of relief from the sought-after stay of execution, and an inadequate substitute for a pre-sale stay of execution to which IIT was entitled.

For these reasons, we hold that the lower court erred in denying IIT's petition to intervene on res judicata grounds, and accordingly direct that appellant be permitted to intervene.

## II

We turn now to the question of the propriety of the lower court's order denying appellant's request for a preliminary injunction. Although the court erroneously denied this relief on res judicata grounds, its decision was also based on the existence of an adequate remedy at law. We must therefore determine the propriety of this decision.

When IIT decided to seek a stay of execution under Rule 3132, it elected to prevent sale of the two land parcels at law rather than in equity, and was consequently precluded from further resort to equity. *See, e. g., Sherwood Bros. Co. v. Kennedy*, 132 Pa.Super. 154, 200 A. 689 (1938). Without determining whether the post-sale Rule 3136 procedure was an adequate substitute for equitable relief, we deem it sufficient to state that appellant was

tions are filed with him not later than ten (10) days after the filing of the proposed schedule.

(e) Upon the filing of exceptions with the sheriff he shall transmit them to the prothonotary together with a copy of the proposed schedule of distribution.

(f) The court shall determine the exceptions, and for this purpose may receive evidence by deposition or otherwise, or may appoint an auditor to hear the evidence and report to the court.

(g) The proceeds of sale need not be paid into court by the sheriff but upon petition of the sheriff or any party in interest, the court may order the proceeds to be paid into court to await distribution or may order the sheriff to invest the fund for distribution pending final disposition of the exceptions or an appeal therefrom.

adequately protected under Rule 3132, so as to bar equitable relief. Accordingly, since we may affirm an order of the lower court on any sufficient basis, *Gilbert v. Korvette's, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974), and because appellant will now have a hearing on the merits of its petition for a stay of execution, we affirm the order of the court below denying preliminary injunctive relief.

Affirmed in part, reversed in part, and remanded with directions that appellant be permitted to intervene for a hearing on the merits of its petition for a stay of execution.

SPAETH, J., did not participate in the consideration or decision of this case.