426 A.2d 696

**MARION POWER SHOVEL COMPANY, DIVISION OF DRESSER INDUSTRIES, INC.**

v.

**FORT PITT STEEL CASTING COMPANY, DIVISION OF CONVAL–PENN, INC.**

**Appeal of the UNITED STEEL WORKERS OF AMERICA, AFL–CIO, an unincorporated association.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Feb. 27, 1981.

Petition for Allowance of Appeal Denied June 19, 1981.

Frank J. Lucchino, Pittsburgh, for appellant.

Ralph T. DeStefano, Martin J. Saunders, Pittsburgh, for Marion Power, appellee.

Henry J. Wallace, Jr., Pittsburgh, for Fort Pitt, appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

The instant appeal is from the order of the court of common pleas denying the petition of appellant, Local No. 1406, United Steelworkers of America, AFL–CIO, to intervene as a party in a replevin action between Marion Power Shovel Company (hereinafter referred to as "Marion") and Fort Pitt Steel Casting Company (hereinafter "Fort Pitt"). Appellant, the collective bargaining representative for Fort Pitt's employees, was engaged in an economic strike against Fort Pitt. Consequently, appellant argues that the petition to intervene should have been granted, since both the union and its members have a sufficient interest in the property involved in the replevin action to warrant intervention pursuant to Pennsylvania Rule of Civil Procedure 2327(4).[1]  For

1.  Rule 2327 provides, in part, as follows:
    At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein . . . if

    .    .    .    .    .

the reasons that follow, we disagree and thus affirm the order of the trial court.[2]

Fort Pitt is a manufacturer of steel castings used to produce gears, brake parts and tractor sheaths for heavy equipment. Marion manufactures heavy strip mining equipment requiring the use of finished castings such as those produced by Fort Pitt. On April 19, 1977, Marion placed an order with Fort Pitt for over 200 steel castings of various types. Because of the United Steelworkers strike against Fort Pitt, however, work on Marion's order ceased as of March 3, 1978. Thus, notwithstanding Marion's receipt of an invoice dated July 31, 1978, all of the completed castings had not been delivered as of that time.

Marion's ability to fill orders for its own equipment was contingent upon its timely receipt of components manufac-

> (4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.
> Pa.R.C.P. 2327(4).

2. It is axiomatic that,
> [A]s a rule, an appeal will not lie from an order refusing leave to intervene, because such order is not a final one .... [W]here [, however,] a denial of a petition to intervene would be a practical denial of relief to which the petitioner for intervention is entitled and can obtain in no other way ... the refusal to permit an intervention is a final order or decree as to the petitioner. *Frey's Estate*, 237 Pa. 269, 271, 85 A. 147, 148 (1912) (citations omitted). *See, e. g., Real Estate Land Title & Trust Co. v. West Chester St. Ry.*, 299 Pa. 76, 149 A. 84 (1930); *Richard Held Builders v. A. G. Allebach, Inc.*, 266 Pa.Super. 101, 403 A.2d 113 (1979); *Taub v. Merriam*, 251 Pa.Super. 572, 380 A.2d 1245 (1977).
> Instantly, the trial court was not called upon to address the question whether the order was appealable and the parties have not raised the issue on appeal. Nonetheless, it is fundamental that we may address the concurrent inquiry of appealability and jurisdiction *sua sponte. MacKanick v. Rubin*, 244 Pa.Super. 467, 473, 368 A.2d 815, 818 (1976). Having thus reviewed the matter, we conclude that the order denying appellant's petition to intervene was indeed final, and thus, an appealable order since a contrary conclusion would effectively preclude much of the relief sought in appellant's Motion to Open and/or Strike Judgment and Set Aside Writ of Seizure and Prayer for Permanent Injunction. Record at 68a. *See* Pa.R.C.P. 3172. *Cf. Richard Held Builders v. A. G. Allebach, Inc., supra* (order denying petition to intervene not appealable where petitioner need not formally intervene to obtain dissolution of an attachment).

tured elsewhere.[3]  Thus, it was not uncommon for Marion to take delivery of partially completed castings.  N.T. 36.  In view of the delay caused by the Steelworkers strike, therefore, Marion and Fort Pitt renegotiated the original purchase order to reflect Marion's willingness to accept delivery of the partially completed castings.  N.T. 44–46.  Subsequently, however, Marion was advised that Fort Pitt would not deliver even the partially completed castings because of the strike.  N.T. 46.  Consequently, on August 3, 1978, Marion filed a Complaint in Replevin to recover possession of the castings.  Fort Pitt thereafter waived its right to notice, hearing and counterbond and disclaimed any interest in the castings.  The trial court thus entered an order directing the issuance of a Writ of Seizure.  Thereafter, on August 18, 1978, appellant filed a petition to intervene and, on August 22, having concluded that appellant had failed to substantiate its claimed possession of the required legally enforceable interest, the trial court refused its petition.

The determination whether to allow "intervention is a matter within the sound discretion of the court below and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review." *Darlington v. Reilly*, 363 Pa. 72, 76, 69 A.2d 84, 86 (1949). *Accord, Taub v. Merriam*, 251 Pa.Super. 572, 578, 380 A.2d 1245, 1249 (1977); *Landis v. Glessner*, 132 Pa.Super. 301, 200 A. 899 (1938).  Instantly, appellant avers the commission of such an abuse in that the trial court failed to consider all of the evidence submitted.  Brief for Appellant at 7.  The evidence to which appellant refers consisted of conclusory statements that the union owned a legally enforceable interest in the castings subject to the replevin action and that the action was the result of collusion between Marion and Fort Pitt. After carefully reviewing the record we find these contentions to be without merit and, accordingly, find no abuse of discretion.

**3.**  Marion also owns a foundry which is apparently capable of producing many of the machine parts which it procures from other sources. *See* N.T. 40.

The alleged evidence of collusion is contained, *inter alia*, at pages 6a and 7a of the Record herein. The pertinent segments follow.[4]

MR. WALLACE: I am Henry J. Wallace, Jr., representing the Defendant [Fort Pitt] in this action. I was not served with the petition to intervene; and accordingly, until today, I was unaware of its contents. I received prior to the proceeding this morning, a copy of the petition and also a copy of the Plaintiff's, Marion Power Shovel Company's answer.

THE COURT: Are you raising that procedural problem?

MR. WALLACE: No, Your Honor. I would like at this time to accept service of the petition to intervene. I would further, to save time, if Mr. Lucchino would so agree. I would adopt as the Defendant's answer the answer of Plaintiff of the petition to intervene.

MR. LUCCHINO: We have no objection.

THE COURT: All right. Let the Record declare then that Fort Pitt Steel Casting Company, Defendant adopts in toto, I presume, the answer to the petition filed by Marion Power Shovel Company . . . .

Record at 6a and 7a.

■ Rule 2328(b) of the Pennsylvania Rules of Civil Procedure requires that "[a] copy of the petition [to intervene] . . . be served upon *each party* to the action [in which intervention is sought]." Pa.R.C.P. 2328(b) (emphasis added). Given the content of the testimony quoted above, it is clear that Fort Pitt was improperly served pursuant to Rule

4. Appellant has referred us to other sections of the record as well. Read as a whole, however, those sections simply establish that (1) Fort Pitt customarily delivers the castings to its customers, Record at 45a & 47a; and (2) because of the strike, Fort Pitt was making no such deliveries. Record 49a. This evidence does not, in our opinion, mandate the conclusion that the replevin action was collusive. To the contrary, after Marion and Fort Pitt renegotiated the purchase order, title to the castings belonged to Marion. Thus, whether a labor strike, cash flow problem or contumacy precipitated Fort Pitt's refusal to deliver the goods, Marion's resort to judicial process to secure possession of the castings was appropriate.

2328. Thus, appellant cannot now contend that Fort Pitt's adoption of Marion's responsive pleading constitutes collusion since it was necessitated by appellant's own failure to comply with the rules of procedure. Even from a practical standpoint, moreover, collusion could hardly be established merely by the fact that Fort Pitt adopted Marion's answer as its own. Marion's answer contained averments designed to buttress its contention that the union's petition to intervene should be denied. Thus, in addition to disputing appellant's claimed interest in the steel castings, Marion sought to refute the union's charge that the replevin action was collusive. Had Fort Pitt been afforded an opportunity to respond in its own right, it is highly unlikely that its response would have differed significantly, if at all, from the response fashioned by Marion. Thus, its adoption of an answer responsive to its own interests, albeit interests shared by Marion, cannot and will not be deemed collusive.[5]

5. Nor are we persuaded by the contrary holding reached by the federal district court in *Gen. Electric Co. v. Bootz Mfg. Co., Inc.*, 289 F.Supp. 504 (S.D.Ind.1968). In *Bootz*, a replevin action was commenced by a customer of a struck manufacturing plant as part of a scheme conceived by attorneys for the company against whom the strike had been directed. At least five such actions had previously been instituted in various courts throughout the state by other similarly situated customers. In addition, the plaintiff had made no demand for the goods and there had been no refusal to deliver by the defendant manufacturer. Finally, the court found the averments in the complaint to be factually untrue. *Id.* at 506–07. In those circumstances, the court felt impelled to conclude that, "even if intervenors should ultimately be adjudged to be without standing to intervene, this court has a right to prevent itself from being stultified by the collusive suit of the original parties plaintiff and defendant." *Id.* at 507.

Our determination that collusion was not involved in the instant case is thus buttressed by the obvious distinctions between *Bootz* and the case *sub judice*. Not a scintilla of evidence was adduced to demonstrate Fort Pitt's complicity in a scheme to defraud the court, the union or any other party. Moreover, no similar law suits have been filed by other customers of the struck company. Finally, we have already noted that a demand for the castings was made and delivery thereof refused.

Even were we to have reached a contrary conclusion on this issue, however, the rules governing intervention in this Commonwealth, *see* Pa.R.C.P. 2326 *et seq.*, contain nothing to suggest that intervention shall be authorized if the action in which intervention is sought is

The second prong of appellant's abuse of discretion argument is that the court disregarded evidence which allegedly established the union's interest in the property sought to be replevied. Again, we disagree.

Appellant's petition to intervene contained numerous rather nebulous averments, among the most specific of which was the following:

> The union has a susbstantial [sic] economic interest in determination of this action, in that the goods which plaintiffs seek to replevy *may be struck goods*, or that the persons who would be utilized to remove the property to be replevied from the defendant's plant *may be engaged in strike breaking activities* against the union. Further, members of the union *may have incentive wages due on these goods*.

Petition to Intervene, ¶ 3, Record at 62a (emphasis added). Since the record contains no evidence on the related questions of struck goods or the possibility of strike breaking activity, and because these matters were not discussed in appellant's brief, we need not address those issues here. Thus, we will only consider the question of incentive wages.

The types of incentive wages claimed to be involved in this matter include direct incentives paid to production employees, indirect incentives paid to laborers, and indirect incentives paid to maintenance employees. While direct incentives and indirect incentives paid to laborers are calculated daily, N.T. 14–16, indirect incentives paid to maintenance personnel are determined on a monthly basis. N.T. 15–16.[6] As of March 3, 1978, the date on which the work

deemed to be collusive. Moreover, our research fails to reveal a single Pennsylvania decision supporting the proposition that an otherwise unqualified party may nonetheless intervene in a private lawsuit as a "private attorney general" to prevent collusion and protect the dignity and jurisdiction of the court. *See generally Gen. Electric Co. v. Blaw-Knox Co.*, 118 P.L.J. 92, 97 (C.P.Alleg.1970). Thus, even if collusion were found to have been present, *only the replevin action* itself, and *not the union's ability to intervene* therein, would be affected.

**6.** Indirect maintenance incentives are based on the total tonnage of goods sold by Fort Pitt during a given month and thus, of necessity,

stoppage commenced, therefore, neither direct nor indirect labor incentives remained undetermined. Moreover, since the sales tonnage figure was readily ascertainable for the month of February, February's maintenance incentive should likewise be deemed determinable as of the date of the strike. Thus, the only incentive pay that could even arguably be deemed undetermined is the indirect maintenance incentive, if any, outstanding on employee production for March 1, 2, and 3, 1978—the only days worked during that month.

■ In ruling on a petition to intervene, the trial court is required to determine, *inter alia*, whether "the allegations of the petition have been established" and, assuming that they have, whether they demonstrate an interest sufficient to justify intervention. Pa.R.C.P. 2329. We have already noted that the only allegation that has been established is the averment that "members of the union *may* have incentive wages due" on the property sought to be replevied. Record at 62a (emphasis added). Thus, we must determine whether a potential claim for indirect maintenance incentives for a three day period of employee production during March, 1978, would justify appellant's intervention in the replevin action.

Intervention shall be allowed whenever "the determination of [a pending] action may affect any legally enforceable interest of [the party seeking to intervene] whether or not he may be bound by a judgment in the action." Pa.R.C.P. 2327(4). The phrase "legally enforceable interest" has been interpreted to require that "the applicant for intervention . . . own an interest in or a lien upon property in question or . . . own a cause of action which will be affected by the action." 8 Goodrich-Amram, Stand.Pa.Prac. § 2327:7 at 373.[7] *See, e. g., General Electric Co. v. Blaw-Knox Co.*, 118

can only be calculated after the pertinent data has been compiled for the preceding month.

7. Rule 2327(4) was, at one time, accompanied by the following footnote:
   [T]he interest justifying intervention must be a right or liability recognized and enforceable at law or in equity as distinguished

P.L.J. 92 (C.P.Alleg.1970); *Neish v. Aliquippa Borough*, 30 D. & C.2d 49, 51 (C.P.Beaver 1963). *Cf.* Official Comment accompanying Pa.R.C.P. 1076(a) ("A person not a party to the action who claims the right to possession of the property may intervene in the [replevin] action as a defendant.") Viewed from this perspective, appellant lacks sufficient interest in the castings to intervene pursuant to Pa.R.C.P. 2327(4).

By its own admission, the union's only interest in the steel castings is "that [its member's] incentive pay *calculations are dependent upon* an accurate inventory and accounting of the various products situated at the Fort Pitt Steel casting plant." Brief for Appellant at 10 (emphasis added). The castings do not themselves represent an interest or cause of action *owned by* the union; nor are they subject to a lien possessed by the union. *See generally Bank of America v. McCauley*, 23 D. & C.2d 362 (C.P.Alleg.1960); *Tucker, Trustees v. Tucker*, 68 D. & C. 318 (C.P.Phila.1949). The union argues, however, that it is qualified to intervene since it would be unable to compute the incentives due its members

from an economic motive or interest in seeing one litigant or another prevail in the proceedings.
Pa.R.C.P. 2327(4); Official Comment (citations omitted).
Appellant's argument, that the comment's deletion from the recent editions of the Rules indicates a revision of the rule governing intervention, is without merit. The official comment formerly accompanying Rule 2327(4) exemplifies the underlying policy basis supporting both the present rule and the rule's predecessor, Equity Rule 25—"The desire to prevent the curious and the meddlesome from interfering with litigation not affecting their rights." 8 Goodrich-Amram, Stand.Pa.Prac. § 2327:7 at 374. Since none of the decisions cited in support of the comment have been questioned by a court of this Commonwealth and because the language appearing in the present rule is identical to the language contained in the 1975 rules edition accompanied by the comment in question, we cannot agree that the rule's drafters intended to amend the rule *sub silentio*. This is particularly true where, as here, the interpretation placed on the rule has been the result of an evolutionary process guided only by the careful exercise of discretion and the close consideration of circumstances involved in every case. *Pennsylvania Crime Comm'n Subpoena*, 453 Pa. 513, 520, 309 A.2d 401, 406 (1973) (citations omitted).

if the castings were removed from the plant.[8]  N.T. 13.  We disagree.

Incentive wages are a creature of the labor agreement between the union and Fort Pitt.  The steel castings, which the union neither claims nor could claim the right to possess, simply serve as *one* means by which to measure employee productivity, upon which the incentive rates are based.  The only incentive arguably undetermined as of the date of the hearing below was the indirect maintenance incentive for work completed on March 1, 2, and 3, 1978.  However, the union adduced no evidence to demonstrate that its members

8.  Although appellant has not advanced its interest *vis a vis* the strike against Fort Pitt as its sole means to justify intervention, its attempt to utilize incentive wages as a vehicle for intervention is, for all intents and purposes, simply another means to the same end.  Thus, we note with approval Judge David Olbum's perceptive and articulate disposition of the arguments advanced by a similarly situated party in *Gen. Electric Co. v. Blaw-Knox Co.*, 118 P.L.J. 92 (C.P.Alleg. 1970).

The Union assets no right in the property which is the subject of the replevin action.  The asserted "ground on which intervention is sought" is that "the Union has a substantial economic interest in the determination of this action" and that "said economic interest is legally enforceable."  The Union appears to contend that because it is engaged in a strike against the defendant, it has a substantial economic interest and advantage in tying up all property in the employer's plant, and that such economic interest will be substantially impaired if this writ of replevin is executed and the property claimed by plaintiff is removed from defendant's plant.  We can understand why a Union is interested in paralyzing the employer's plant, but we fail to comprehend by what rationale this economic interest attains the dignity of a legally enforceable right.  A Union has a legal right to strike and, by peaceful picketing, to attempt to persuade others to refrain from conducting business with the employer.  But it has no legal right to enjoin or prevent others from doing so.  The Union's contention that it has a legally enforceable interest in "permanently enjoining" the execution of this writ of replevin is tantamount, in our view, to a contention that, once a strike is called, the Union is entitled to a court order completely paralyzing the employer's operations, and that the Union has a right to prevent the removal of any property from the employer's plant and to determine who and what may enter and leave the plant.  We are not aware that that is the law.  "No property or cause of action owned by [petitioner] can be affected by the disposition of the basic action"; *Pennsylvania Railroad Company v. Hughart*, 422 Pa. 615, 619, [222 A.2d 736.]  Therefore, the Union's "economic interest" is not legally enforceable.

had even performed any work on the castings in question during the pertinent period of time. Moreover, even assuming, *arguendo*, that work had been performed, the *potential* problems inherent in a determination of the amount of incentives due was obviated by agreement of the parties. The following excerpt of testimony adduced at the hearing below is illustrative of the solution achieved.

Q. [Counsel for Fort Pitt] Is it not a fact, sir, that the company has told you and represented in open Court on previous occasions that it will pay any incentives of that it determines to be due on castings?

A. [James Garry-Union President] Yes.

Q. Is it not a fact that you may file a grievance under the grievance procedure if you disagree with the calculation of incentives?

A. Yes.

N.T. 21. Thus, we simply cannot agree that the union's "interest" in the castings is sufficient to justify its intervention since its interest, if any, will in no way be affected by the action between Marion and Fort Pitt.

Accordingly, we affirm the order of the trial court denying appellant's motion to intervene.[9]

HESTER, J., concurs in the result.

*Id.* at 94.

9. By order dated September 17, 1979, we authorized the parties to submit post-session memoranda. Appellant's memorandum presented for our consideration the recent decision by the United States Court of Appeals for the Fifth Circuit in *United Steelworkers v. Bishop,* 598 F.2d 408 (5th Cir. 1979). Appellee, Marion, likewise submitted a memorandum in response to appellant's discussion of *Bishop.* After considering the memoranda filed as well as the *Bishop* decision itself, we conclude that the case has no bearing on the instant controversy.

In *Bishop,* the steel worker's union engaged in a strike against a steel fabricating company. The struck company was thus unable to complete work on a particular customer's goods. Thereafter, the customer demanded delivery of the product in its unfinished state. The fabricator refused to make such delivery, however, and a replevin action was commenced. After a hearing, a federal magistrate directed the struck company to make delivery. The union then brought suit for declaratory relief, *viz,* a declaration that the Norris-

LaGuardia Act, 29 U.S.C.A. § 101 *et seq.*, precludes the entrance of an injunction in a case "growing out of" a labor dispute.

Notwithstanding these facts, any similarity between *Bishop* and the case *sub judice* ceases with the existence of a strike, the customer's demand for, and the manufacturer's concomitant refusal to deliver, said goods. Section 7 of the Norris-LaGuardia Act "plainly deprives the federal court of jurisdiction to enter any injunction 'in any case *involving or growing out of* a labor dispute,' except in strict conformity with the Act." *United Steelworkers v. Bishop*, 598 F.2d at 414 (emphasis added). Thus, since an injunction had been entered, the sole question before the *Bishop* panel was whether an injunction was proper, *i. e.*, "whether the replevin action brought by the plant's customer for recovery of property to which it was entitled under state law 'involved' or 'grew out' of" a labor dispute. *Id.* At no point in its opinion did the court address the issue of intervention or posit the level of interest sufficient to qualify as an intervenor. Thus, aside from the fact that our decision herein must adhere to Pennsylvania precedent, the *Bishop* decision is simply inapposite to the instant proceeding.