## Stenger v. Lehigh Valley Hospital Center

*John David Stoner,* for plaintiffs.

*George G. Murphy,* for defendant Samuel W. Miller Memorial Blood Center.

BACKENSTOE, *P.J.,* November 6, 1987 — This case is presently before the court on a petition to intervene by the *Morning Call,* Inc. Plaintiffs, William R. Stenger, Donna A. Stenger, Craig Stenger, and Barry Stenger commenced the within action against the above-named defendants by complaint filed on or about March 16, 1987 which alleges that Donna A. Stenger, while receiving treatment at the Lehigh Valley Hospital Center was transfused with units of blood which were contaminated and from which Donna A. Stenger contracted Acquired Immune Deficiency Syndrome (AIDS). Preliminary objections have been filed on behalf of defendants and are currently pending. Discovery for the within action proceeded with the deposition of plaintiff, William Stenger, taken on April 15, 1987. This deposition was not completed but was adjourned after several hours of questioning.[1] Plaintiffs filed a mo-

---

1 William Stenger's deposition was completed on May 2, 1987. The depositions of plaintiff, Donna Stenger, was taken on April 16, 1987 and April 23, 1987.

tion for a protective order on April 30, 1987 alleging that the confidentiality of future depositions would be compromised. Following argument and with the agreement of counsel, the court entered a protective order relating to the depositions in the within matter.

The protective order provides in pertinent part:

(1) No persons other than parties and their counsel, and experts and/or investigators executing Exhibit "A" hereto, shall attend any of the depositions scheduled or to be scheduled in this case.

(2) There shall be no disclosure, copying, summarizing or use of the information discovered in depositions, interrogatories or any other formal discovery process by any party in this case, and all such documents shall be and remain under seal.

Timely exceptions to this order, requesting an amendment of subparagraph (2), were filed on behalf of defendants, Lehigh Valley Hospital Center, Samuel Huston, and Theodore J. Matulewicz, M.D.

On or about May 11, 1987, the *Morning Call*, Inc. presented a petition to intervene in the case at bar. The *Morning Call* seeks permission to intervene in order to file exceptions to the April 30, 1987 pretrial protective order. If permitted to intervene, the *Morning Call* would request an amendment of subparagraph (2) of this court's protective order. In seeking to intervene the *Morning Call* is arguing that this court's order of April 30, 1987 is overly broad and far-reaching in its effect upon the newspaper and the public. The *Morning Call* contends that the protective order violates the Pennsylvania Rules of Civil Procedure, as well as the common law and the constitutional rights of access to judicial records.

Pennsylvania Rule of Civil Procedure 2327 sets forth the four categories of persons who may be

permitted to intervene in a civil action. This rule provides as follows:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

The *Morning Call* does not fall into section (1) of Pa.R.C.P. 2327, as it has not demonstrated that the entry of a judgment or the satisfaction of such judgment will impose any liability upon itself. The petition to intervene cannot be granted under section (2) because the *Morning Call* will not be adversely affected by the distribution or disposition of property in the custody of the court. Section (3) is not applicable to the instant action because the *Morning Call* has not established that it could have been joined as an original party. The only real question in the argument is whether the *Morning Call's* interest in the present case rises to the level of being a "legally enforceable interest" under section (4).

Pennsylvania Rules of Civil Procedure 2327 (4) was written and enacted to prevent the curious and

meddlesome from interfering with litigation not affecting their rights. *Pennsylvania Railroad Company v. Hughart*, 422 Pa. 615, 222 A.2d 736 (1966). In *Marion Power Shovel Company v. Fort Pitt Steel Casting Company*, 285 Pa. Super. 45, 426 A.2d 696 (1981), the Superior Court of Pennsylvania opined that the phrase "legally enforceable interest" requires a proposed intervenor to own an interest or lien upon property in question or to own a cause of action which will be affected by the case at bar. Id. at 53, 426 A.2d at 700. It is clear that the intervenor does not come within any of the above categories.

The *Morning Call*, however, makes the following arguments in support of its petition which are independent of the rules of civil procedure:

(1) The press has covered the present controversy but has not created it.

(2) This matter is presently such an enormous controversy and potentially has such a great impact upon the Lehigh Valley that the press and public have a right to know about the status of the case.

(3) The Lehigh Valley Hospital Center, the largest medical facility in the Lehigh Valley, and the Miller Memorial Blood Center are accused of spreading a deadly disease and then either not promptly notifying plaintiffs about the possible danger or attempting to cover up their alleged liability.

(4) The press and the public must know whether the blood being used at the Lehigh Valley Hospital Center is safe and whether the procedures being used for the transfusion of blood and blood products at defendant hospital center are safe and effective.

(5) The court's order of April 30, 1987 is so broad and far-reaching that it will prohibit any public comment by anyone associated with this case throughout the entire length of the proceedings.

In summary, the *Morning Call* alleges that be-

cause this case is of great importance, it has both a constitutional and a common law right to intervene and inform the public of the details of this case. We have not been presented, nor does the court find, any case law or statutory authority in support of the *Morning Call's* argument that it has a legally enforceable right or interest.

The cases cited by the *Morning Call* giving it a right to intervene are criminal rather than civil in nature and accordingly are inapplicable. Further, we note this case does not involve any governmental body or function. As hereinafter discussed we believe it clear that discovery stands on a different footing than other court proceedings; that there is no per se constitutional or common law right of access to information procured during the course of discovery. Moreover, to " . . . secure, the just, speedy and inexpensive determination" of an action (see Pa.R.C.P. 126) the court should grant relief if it concludes — as all the litigants contend — that an order is necessary for their protection. The court has a duty to protect litigants and third parties from an invasion of their privacy, unreasonable annoyance, expense and danger of an unfair trial because of adverse and unfair publicity. Therefore, for the above reasons more fully discussed below, we dismiss the *Morning Call's* arguments and deny access to the discovery documents in this matter.

In *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed. 2d 17 (1984), the U.S. Supreme Court held that "[a] litigant has no first amendment right of access to information made available only for purposes of trying his suit." Id. at 32, 104 S.Ct. at 2207. *Seattle Times* involved the challenge of a protective order by a newspaper which was not an intervenor but one of the initial litigants in the matter. In considering the paper's

first amendment claim, the court indicated that the unrestricted right to gather information does not accompany the right to speak or publish. Therefore, continued court control over discovered information does not raise the same specter of government censorship that such control might suggest in other situations. Id. On this basis, the court concluded that an order prohibiting dissemination of discovered information before trial is not a classic prior restraint requiring exacting first amendment scrutiny. Id. at 34, 104 S.Ct. at 2208. Rather, because the liberality of pretrial discovery provides the opportunity to obtain information that if publicly released would damage reputation and privacy, it is necessary for the trial court to have the authority to issue protective orders to prevent the abuse of the discovery process. Id. at 34-35, 104 S.Ct. at 2208-2209.

While *Seattle Times* foreclosed any claim of an absolute public right of access to discovery materials, it did not entirely eliminate the first amendment as a factor in the review of protective orders. *Anderson v. Cyrovac, Inc.,* 805 F.2d 1 (1st Cir. 1986). Because they implicate first amendment rights to a lesser extent, protective discovery orders are not subject to strict or heightened scrutiny but rather to scrutiny made within the framework of Federal Rule of Procedure 26(c)'s requirement of good cause. Id. at 7. A protective order does not offend the first amendment if it:

"(1) is entered on a showing of good cause as required by Rule 26(c);

(2) is limited to the context of pretrial discovery; and

(3) does not restrict the dissemination of the information if gained from other sources." *Seattle Times,* 467 U.S. at 37, 104 S.Ct. at 2209-2210.

Clearly, the protective order as amended satisfies these criteria.

First, a showing that disclosure will result in clearly defined and serious injury to the party seeking closure establishes good cause for a protective order. *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1071 (3rd Cir. 1984). The case before us deals with the intimate and most private affairs of the litigants. The original petition for protection alleged that the depositions would cover: (a) the sexual conduct and habits of William Stenger; (b) the sexual conduct and habits of Donna Stenger; (c) the names and addresses of relatives, friends, physicians and others who may have had intimate contact with the Stenger family; and (d) intimate family details concerning personal habits and hygiene. The potential for injury as a result of the dissemination of this information is obvious.[2]

Second, the protective order is limited to the discovery context. Subparagraph (2), as amended, defines the scope of the order by prohibiting disclosure of information discovered in depositions, interrogatories, or any other formal discovery process. Third, the order does not restrict the dissemination of information obtained from other sources.

---

2. Further, plaintiffs note in their brief at page 14, "since the order of April 30, 1987, the continuing discovery in this case has resulted in objections relating to medical records of third persons and concerns by the Commonwealth of Pennsylvania, Department of Health, about disclosing information it had obtained on a confidential basis from certain hospitals it had investigated in connection with the transfusion of blood that was possibly contaminated with the AIDS virus . . . (t)he Department of Health recently said that although it would not release certain information . . . it had obtained from hospitals on a confidential basis, it would reconsider . . . if a final protection order is entered."

The *Morning Call* may publish any information covered by discovery, so long as its source for that information is independent of the discovery process. We conclude that the protective order entered in this matter satisfies the *Seattle Times* criteria, and therefore does not offend the first amendment.

As previously indicated, the *Morning Call* also asserts a common law right to judicial records. *Katz v. Katz*, 356 Pa. Super. 461, 514 A.2d 1374 (1986), discussing whether divorce proceedings may be closed to the public, is cited as authority for this position. However, the *Morning Call's* reliance upon *Katz* is misplaced. According to *Katz*, *Publicker* concluded that because there is a common law presumption in favor of openness, a party seeking closure has the burden of showing that (1) the proceedings will involve material of the type protected by the courts; and (2) there exists good cause for closure. Id. at 471, 514 A.2d at 1379. Further, the court noted while *Publicker* reversed an order closing a hearing because of the trial court's failure to articulate reasons for its order, it did not command that all civil proceedings be open to the public. Id. at 474, 514 A.2d at 1381. Thus, the common law right of access is not absolute. Every court has supervisory powers over civil proceedings in progress before it and may deny access where such may become a vehicle for harmful or improper purposes. Thus, the court may exclude the public from proceedings or records of proceedings in order to protect private as well as public interests. These interests include the privacy or reputations of innocent parties and the minimization of the danger of an unfair trial due to adverse publicity. Id. at 468, 514 A.2d at 1377. We conclude that the protective order

entered in this case is properly within the discretion of the court as defined by *Katz* and *Publicker*.

The *Morning Call's* claim in this matter is based upon a belief that when filed with the court, deposition transcripts become court records accessible to the public. Pa.R.C.P. 4017(d) requires that depositions be filed with the court following their completion. Therefore, the *Morning Call* claims it is entitled to inspect deposition transcripts filed with the court. *Seattle Times* considered this argument and concluded that while

"Rules of Civil Procedure may require parties to file with the clerk of the courts interrogatory answers, responses to request for admissions, and deposition transcripts. Jurisdictions that require filing of discovery materials and customarily provide that trial courts may order that the materials not be filed or that they be filed under seal . . . . Thus, to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court." 467 U.S. at 33, 104 S.Ct. 'at 2207, footnote 19 (citations omitted). Clearly, as indicated by *Katz*, supra, Pennsylvania trial courts possess the power to limit access to courthouse records. Where the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied. *Commonwealth v. Fenstermaker*, No. 144 E.D. Appeal Docket 1986, slip op. at J-88-14 (Supreme Court of Pennsylvania August 25, 1987). Thus, a filing requirement does not automatically guarantee public access to discovery materials, such as pretrial depositions which are not public components of a civil trial. 467 U.S. at 33, 104 S.Ct. at 2207. In fact,

"[m]uch of the information that surfaces during

pretrial discovery may be unrelated, or only tangentially related to the underlying causes of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." Id. at 33, 104 S.Ct. at 2208.

Further, it should be emphasized the Pennsylvania Rules of Civil Procedure specifically authorize the procedure followed by the court in this matter. In particular, Rule 4012(a)(7) provides that

"[u]pon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense including . . . that a deposition shall be sealed and opened only by order of the court." This rule is intended "to prevent unfavorable publicity, or unwarranted or embarrassing disclosure," and addresses several of this court's concerns with the allowance of public access to discovery materials in civil matters. Goodrich-Amram 2d, §4012(a):7. We believe that nonparty access to discovery materials may have a chilling effect upon potential litigants. Human nature dictates that an individual will be reluctant to pursue his legal rights once he is aware that doing so will result in the exposure of his private life. This intrusion into a litigant's private affairs at the discovery or pre-trial stage, could be a deterrent to the utilization of the court system, and therefore must be considered by the court in the exercise of its supervisory powers. Further, as is evident in the present matter, nonparty access in controversial cases threatens the right of the litigants to a fair trial. It is essential that the court ensure this right by preventing an unfair presentation, prior to trial, of the facts and issues

underlying a controversy. We are strained to envision a scenario in which the pretrial presentation in the present matter will not impinge upon the right to a fair trial. For example, if we seal one side's discovery — plaintiff's — and not that of defendant's — serious questions as to an unbalanced and prejudicial public perspective arise. If we schedule a piecemeal review of the discovery, we will create — as is already patently clear — expense and burdens of great magnitude to the litigants and to the court that rule 4012(a)(7) is designed to prevent.

In concluding our discussion of the pulic's right of access to judicial records, we take note of Richard L. Marcus' article "Myth and Reality in Protective Order Litigation," 69 Cornell L. Rev. 1 (1983), which stated that

"the courts should limit nonparty access to materials subject to a protective order to those cases in which one of the following special justifications is present: (1) the information is needed as evidence in other litigation; (2) the information formed the basis of a pretrial ruling on the merits and access is necessary to permit evaluation of that ruling; or (3) in extremely rare cases, the subject of the litigation is alleged governmental misconduct, and there is a strong public interest in access." 61 Cornell L. Rev. at 73. Although written before *Seattle Times*, we believe Marcus' conclusions provide an appropriate guideline for the determination of public access. None of the special justifications allowing nonparty access to protected discovery materials are present in the instant case.

Accordingly, we deny the relief requested. In so holding we do not simply dismiss the argument that this litigation is of such great impact to the community that discovery should be made public. We are of course not oblivious to the gravity and perils that led

to the instant litigation. Indeed, we fully understand the newspapers' interest as well as the legitimate concern of the community. However, to grant the *Morning Call's* request, we would in our judgment be suspending the rules of civil procedure, and seriously compromising the rights of the litigants.

*Anderson,* supra, involved an allegation that defendants had contaminated the city water supply by discharging toxic chemicals into the ground. Therefore, similar to the present case, the matter was of great public concern and items obtained through discovery were compelling sources of public information. Concerned that publicity would cause difficulty in obtaining an impartial jury and conducting a fair trial, the district court entered a protective order refusing access to documents submitted in connection with discovery proceedings. Upon consideration of a challenge to the district court's refusal, the court of appeals held that there need only be good cause to deny public access because there is no constitutional or common law right of access to such documents. 805 F.2d at 14. Having made a determination of good cause for closure in the instant matter, we are constrained to deny access despite the undeniable existence of community interest in the instant litigation.

As noted, the attorney for the Lehigh Valley Hospital Center also filed exceptions on the basis that paragraph (2) of the agreed upon order is overly broad. We agree and amend paragraph (2) as requested.

## ORDER

And now, this November 6, 1987, after oral argument, consideration of the briefs, and a review of the entire record in the above-captioned matter, and for the reasons expressed in the attached opinion, it

is ordered that the *Morning Call,* Inc.'s petition to intervene is denied.

And further, upon consideration of the within exceptions filed by the Lehigh Valley Hospital Center to the order entered on April 30, 1987, in the above captioned matter, the aforesaid order is amended as follows:

1. No persons other than parties and their counsel and experts and/or investigators executing Exhibit "A" hereto, shall attend any of the depositions scheduled or to be scheduled in this case.

2. There shall be no disclosure, copying, summarizing or use of the information discovered in depositions, interrogatories, or any other formal discovery process by any party in this case, other than for use in the preparation of pleadings, or for preparation and trial of this case, including review by experts of the parties choosing and all such documents shall be and remain under seal.