545 A.2d 896

In re ESTATE OF Mary L. ALBRIGHT, a/k/a Mary
L. Hayes, Deceased.

Appeal of BEHREND, MORAN, ERNSBERGER AND TAMILIA
for Kenneth W. BEHREND, Mark B. Aronson, Charles M.
Albright, Administrator of the Estate Mr. Hayes, Alleged
Husband of Mary L. Albright, a/k/a Mary L. Hayes.

In re ESTATE OF Mary L. ALBRIGHT, a/k/a Mary
L. Hayes, Deceased.

Appeal of The ALLEGED LAW FIRM OF BEHREND, ERNS-
BERGER AND MORAN Mark B. Aronson, Himself Charles
M. Albright, Administrator of the Estate Mr. Hayes, Alleged
Husband of Mary L. Albright, a/k/a Mary L. Hayes.

Superior Court of Pennsylvania.

Argued May 3, 1988.

Filed June 16, 1988.

Reargument Denied Aug. 4, 1988.

George K. Hanna, Washington, for appellant (at 1733).

Kenneth R. Behrend, Pittsburgh, for appellant (at 156).

John W. Gibson, Pittsburgh, for appellees.

Before CIRILLO, President Judge, and BECK and POPOVICH, JJ.

CIRILLO, President Judge:

This is a consolidated appeal challenging two orders of the Orphans' Division of the Court of Common Pleas of Allegheny County.[1]  Number 156 appeals the denial of permission to intervene requested by the firm of Behrend, Moran, Ernsberger & Tamilia, and number 1733, filed by "the alleged firm of Behrend, Moran and Ernsberger", challenges an assessment of surcharge.  Also before the court is appellant Behrend, Moran, Ernsberger & Tamilia's application for a stay of the appeal at number 1733.

I.  Application For Stay

and

Appeal at No. 156 Pittsburgh 1987

The first issue before the court is appellant Behrend, Moran, Ernsberger & Tamilia's [hereinafter B, M, E & T]

---

1. The captions above do not correctly set forth the parties to the appeals.  No. 156 involves only the firm of Behrend, Moran, Ernsberger and Tamilia in its own behalf; No. 1733 involves only the alleged firm of Behrend, Ernsberger and Moran in its own behalf.  Because these two appeals were once consolidated with three others brought by Mr. Behrend and Mr. Aronson individually and by the firm of Behrend and Aronson which have been quashed, the current captions now erroneously name some of those parties.

application for a stay, filed with this court on March 6, 1987. On March 31, 1987, we directed that the motion for stay be argued before the panel. Because this motion asks us to delay proceeding on the other appeal in this matter, No. 1733, which has been consolidated with B, M, E & T's appeal pursuant to our order of March 31, 1987, until after this firm's individual appeal is heard, we must first rule on the motion.

B, M, E & T asserts that a favorable decision on its appeal from the denial of permission to intervene will necessitate delaying the hearing by this court of the issues raised in the other appeal, as allowance of its intervention would mean an opportunity for B, M, E & T to address the issues involved and would affect the substantive rights of all involved. If, however, its argument on appeal is not sustained, there would be no need for a stay. Therefore, in order to reach a decision on the requested stay, we must examine the merits of B, M, E & T's appeal. The merits of this appeal are also germane to our determination of whether the denial of intervention is to be considered a final order, appealable of right. *Boise Cascade Corp. v. East Stroudsburg Savings Assn.*, 300 Pa.Super. 279, 446 A.2d 614 (1982).

The abbreviated history applicable to B, M, E & T's appeal begins with the entry of an order of surcharge on June 10, 1986, which provided that "the law firm of Behrend, Ernsberger and Moran" was to pay a designated sum to the administrator of the estate. Subsequent to the entry of this order, Behrend, Moran, Ernsberger and Tamilia, appellants here, filed exceptions on behalf of Mr. Behrend. Among these was the following:

No. 58. It is an error of law and fact to make an award against Behrend, Ernsberger and Moran.

After argument, these exceptions were dismissed by the court *en banc* on November 14, 1986, and the order of June 10th confirmed absolute. B, M, E & T's petition to intervene was filed after the November 14th ruling, on December 8th. It recited that there was no legal entity called

"Behrend, Ernsberger and Moran" and that the legal interests of B, M, E & T might be adversely affected by the surcharge. The petition, which was denied, after argument, on December 8, 1986, did not specify how B, M, E & T's legal interests might be affected if it were not allowed to intervene, nor does its statement of questions for appeal do more than raise the specter of possible liability because of partnership law. It does not set forth the nature of the partnership relationship which it implies could make the liability imposed by the surcharge order applicable to it. B, M, E & T, as far as the record shows, has not shown that, absent intervention, it would be unable to protect its interests. The trial court, in fact, denied its petition for the very reason that it found B, M, E & T's interests already adequately represented.

B, M, E & T argues that it was error for the court to deny its petition without a hearing with notice to all parties as required by Pa.R.C.P. 2329. The Estate of Mary Albright, appellee in these matters, argues that the petition seeking intervention was untimely. The court's opinion in support of the denial states that the reasons advanced for intervention were specious in that they revolved around "the juggling of names, not on a party's legal rights." It based its denial on Pa.R.C.P. 2329(2) which allows a petition for intervention to be denied if the interest of the petitioner is already adequately represented, which it found to be the case in this matter.

At the outset, it is important to note that Mr. Behrend and the firm of Behrend and Aronson [hereinafter B & A] were, for many years, counsel to the Albright family and were, for nearly ten years, counsel to the administrator for the Albright Estate, which relationship has given rise to the matters now on appeal. Mr. Behrend has evidently been associated with a number of partners over the time period covered by this litigation. It is abundantly clear from the court's opinion in support of the orders challenged in the consolidated appeals, of which B, M, E & T's is one, that Mr. Behrend and the firm of Behrend and Aronson were responsible for the acts for which the surcharge was as-

206

sessed. Mr. Aronson disassociated himself from Behrend and Aronson in mid-December of 1983 and the firm of B, M, E & T was formed at some unspecified point after these acts, other associations of Mr. Behrend prior to the formation of B, M, E & T being unclear.

The estate points out that B, M, E & T was clearly aware as of the entry of the June 10, 1986 order that the entity named therein may have been incorrect. The record bears this out in that B, M, E & T represented Mr. Behrend in filing exceptions to that order, including one, referenced above, which challenged this portion of the order. If B, M, E & T felt its own interests to be jeopardized by this misnomer, it could have petitioned to intervene at any point prior to the resolution of the exceptions by the court *en banc* on November 14, 1986. On that date, the June 10th order was made final and the matter concluded. B, M, E & T's petition to intervene was filed nearly a month later on December 8th.

To petition the court to intervene after a matter has been finally resolved is not allowed by our Rules of Civil Procedure. It is only *during the pendency* of an action that the court may allow intervention. Pa.R.C.P. 2327. An action is "pending", according to Black's Law Dictionary (5th Ed.), when it is:

> begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is "pending" from its inception until the rendition of final judgment.

*See Admiral Homes, Inc. v. Floto Management Corp.*, 397 Pa. 509, 156 A.2d 326 (1959); *School Dist. of Robinson Twp. v. Houghton*, 387 Pa. 236, 128 A.2d 58 (1956); *Newburg by Newburg v. Board of Public Educ.*, 330 Pa.Super. 65, 478 A.2d 1352 (1984). As our Commonwealth Court recognized in *Santangelo Hauling, Inc. v. Montgomery County*, 84 Pa. Cmwlth. 427, 479 A.2d 88 (1984), where a court no longer has power to permit intervention because a matter has been finally adjudicated, a hearing on a petition to intervene would be pointless.

■  Especially where the party proposing its intervention has had ample notice and opportunity to protect its interests earlier, to allow intervention at such a late date would unduly prejudice the interests of a party in whose favor the matter has been resolved. Pa.R.C.P. 2329(3); *accord, Jackson v. Hendrick*, 498 Pa. 270, 446 A.2d 226 (1982). Therefore, however correct B, M, E & T may be with regard to the necessity for a formal hearing before disposing of a petition to intervene, that argument is irrelevant where the petition was not timely filed.

We may not disturb the chancellor's ruling unless there has been a manifest abuse of discretion. *Marion Power Shovel Co. v. Fort Pitt Steel*, 285 Pa.Super. 45, 426 A.2d 696 (1981); *Harrington v. Philadelphia City Employees Federal Credit Union*, 243 Pa.Super. 33, 364 A.2d 435 (1976). There was no abuse of discretion here. Because the record is unclear, this court is unable to determine with certainty whether the order appealed from should be treated as final. *See Scharnitzki v. Bienenfeld*, 368 Pa.Super. 610, 534 A.2d 825 (1987). No party has moved to quash this appeal. However, whether we defer to the trial judge and quash the appeal as interlocutory or give B, M, E & T the benefit of any doubt and hear the appeal, the result is the same. We, therefore, in an exercise of caution and recognizing the complexity of the issues raised in these consolidated appeals, refrain from quashing this appeal *sua sponte.*

For the above reasons, and those recited by the chancellor, we find that B, M, E & T's appeal cannot be sustained. Because its argument on appeal cannot be sustained, there is no need for a stay.

The order of the chancellor denying its intervention is affirmed and the application for stay denied.

## II.   No. 1733 Pittsburgh 1987

This appeal was taken from the June 10, 1986 order which was confirmed by the court *en banc* on November 14, 1986. This order read:

AND NOW, to-wit, this 10th day of June, 1986, it is hereby ordered, adjudged and decreed that the law firm of Behrend, Ernsberger and Moran shall be surcharged as follows:

$ 4,125.00 (Principle owing to the estate)

$ 3,918.75 (Interest from December, 1976 to June, 1986, 9.5 years)

$ 9,250.00 (Attorney's fees)

TOTAL AMOUNT ... $17,293.75

These monies shall be paid to Charles Albright, Jr., the administrator of the Estate of Mary Albright (Hayes) within 30 days of this Order, for distribution as set forth above.

There were originally five appeals in this matter which were, by our order of March 31, 1987, consolidated. Three of these (Nos. 19, 30 and 31 Pittsburgh 1987) were quashed as interlocutory by an order of this court in April of 1988. They had raised the issue of whether the chancellor had jurisdiction on December 22, 1986 to modify the order of June 10, 1986, which was confirmed on November 14, 1986 by the court *en banc*, since an appeal (No. 1733 Pittsburgh 1987) was taken on December 12, 1986. Despite their contention that the trial court was without jurisdiction, the three parties separately appealing the December 22nd order filed exceptions to that order contemporaneously with their appeals. Because the record did not reflect a ruling by the chancellor on these exceptions, we quashed the appeals as premature.

In that the chancellor's order of December 22, 1986, was entered for the purpose of correcting a misnomer in its original order[2], the quashing of the three appeals placing

2. The December 22, 1986 order reads:
AND NOW, to-wit this 22nd day of December, 1986 it is hereby order, adjudged and decreed that the Order of June 10, 1986 shall be and hereby is amended to identify the parties to be surcharged as follows: Kenneth B. Behrend, Mark B. Aronson, the partnership of Behrend & Aronson. It is furthermore ordered that in all other respects the Order of June 10, 1986 shall remain in full force and

that order before us for review complicates our disposition of the remaining appeal dealing with the surcharge order (No. 1733). That appeal was taken by "the alleged firm of Behrend, Ernsberger and Moran" from the November 14, 1986 order which contained the misnomer. Therefore, the parties to whom the surcharge order was evidently meant to be directed—Mr. Behrend, Mr. Aronson and the firm of Behrend and Aronson—are not technically parties to No. 1733. Because the briefs were drafted and submitted after our order of consolidation, they address all of the issues raised in the five appeals, including questions germane to the substantive issues involved in levying the surcharge; there is no brief submitted solely on behalf of the alleged firm of Behrend, Ernsberger and Moran. The entity taking this appeal, presumed to be a law partnership, is concerned about the imposition of liability for the surcharge because of the appearance of Mr. Behrend's name [3] in the surcharge order, knowing that the chancellor's opinion clearly identifies him as responsible. We, therefore, have considered only those questions raised by the consolidated briefs which would logically be attributed to the party taking this appeal.

The thorough and well-reasoned opinion of the chancellor in support of the order appealed at No. 1733 leaves no doubt that the parties found responsible for the actions giving rise to the surcharge are Mr. Behrend and the firm with which he was then associated, the partnership of Behrend and Aronson. Of all of the parties represented in these consolidated appeals, it was only this firm and only these attorneys who were involved with the estate during the period which was the subject of the court's inquiry. Underlying the order of surcharge was their mishandling of the administration of the estate as counsel for the administrator. The misnomer contained in the June 10, 1986 order

effect, and in accordance with the Order of the Court *en banc* dated November 14, 1986, the Order is confirmed absolute and reinstated.

3. As we noted previously, Mr. Behrend was associated with the firm of Behrend & Aronson during the period addressed by the surcharge order. He was, at the time of the filing of this appeal, evidently associated with the firm of Behrend, Moran, Ernsberger & Tamilia.

was consistently objected to by the parties involved. However, the chancellor's December 22, 1986 order correcting the misnomer is not before us, nor are the parties named therein, with the exception of Mr. Behrend whose name appears in both orders and in the name of the firm taking this appeal.

The appeal presents a threshold issue: the jurisdiction of the court below. It is argued that, since a citation never issued, the court lacked jurisdiction to enter its order of surcharge.

Applications to the orphan's court division are made by petition. 20 Pa.C.S. § 761. Orphans' Court Rule 3.5 provides:

> Proceeding on petition shall be by citation to be awarded by the Court upon application of petitioner in any case where jurisdiction over the person of the respondent is required and has not been previously obtained. In all other cases, proceedings on petition shall be by notice. In either event a copy of the petition shall be served with the citation or notice unless service thereof is made by publication. Neither a citation or notice shall be required where all parties in interest are the petitioners or their consents or joinders are attached.

In the case at bar, on petition of an heir to the estate, a citation was issued upon the estate's administrator on June 1, 1983. That citation directed the administrator to show cause why he should not file a final accounting, why the real estate should not be partitioned, and why the administrator should not be surcharged for mismanagement. On September 21, 1983, counsel for this heir moved to disqualify Mr. Behrend and his firm from representing the administrator, alleging conflict of interest. At the end of this hearing, the court requested Behrend and Aronson to withdraw as counsel for the administrator and appointed new counsel to represent the estate.

On behalf of the administrator and heirs of the estate, the newly appointed counsel then filed a petition seeking a citation to previous counsel to account for cash assets of the

estate. The petition mentions only Mr. Behrend by name. The docket does not contain an entry indicating on whom service of this petition was made nor does it reflect that any answer was filed.[4] On November 16, 1983, a hearing was held on the petition. Mr. Behrend appeared, presumably representing himself and the then-extant firm of Behrend and Aronson, and indicated to the court that he wished to present a defense. The court stated that it would reserve ruling on the issuance of a citation until Mr. Behrend's defense was completed.

On December 7, 1983, Mr. Behrend presented a petition to withdraw his appearance, stating that the administrator would not cooperate in preparing an account. This petition contained a partial accounting. No disposition of this petition appears in the record, but the court indicated that the issue of mismanagement raised by the administrator's petition for an accounting was "a continuing issue before the court." In a series of hearings between November 16, 1983 and February of 1985, the court focused on the questionable conduct of the firm of Behrend and Aronson in handling the estate. Ultimately, on June 10, 1986, the court issued its order of surcharge. The opinion rendered by the chancellor in support of his order details the improper conduct and breaches of fiduciary duty which the court found. The record discloses no issuance of a citation to B & A and it is this omission that appellants seize upon to argue that the June 10th order is a nullity because the court lacked personal jurisdiction over them when it was entered.

■ The statutory provision relating to citations is 20 Pa.C.S. § 764 which provides:

Jurisdiction of the person shall be obtained by citation to be awarded by the orphan's court division upon application of any party in interest. The citation shall direct the party named therein to file a complete answer under oath

4. The docket in the record reproduced for appeal, while certified to be a true and correct copy, does not appear to contain a complete recitation of all events. For example, there are only two entries regarding service in this matter involving numerous attorneys and more than five years of prolific litigation.

to the averments of the petition on or before a day certain, which shall be not less than ten days after the service thereof, and to show cause as the decree of the division shall provide.

Appellants rely on *Hicks' Estate*, 414 Pa. 131, 199 A.2d 283 (1964), for the proposition that issuance of a citation is mandatory in order to confer in personam jurisdiction in Orphans' Court. A close reading of this case, however, indicates a recognition of the well-established principle that, while one may never waive subject matter jurisdiction, personal jurisdiction is readily waivable. That court referred to several previous cases recognizing this principle and stated, "In the absence of service of citation upon appellant *or general appearance on her behalf*, all that transpired below was without jurisdiction over her person and was, therefore, a nullity." *Hicks, supra*, 414 Pa. at 135, 199 A.2d at 285 (Emphasis supplied). We find this distinction to be controlling here.

Further, the *Hicks* court was presented with a situation in which the person subject to its order had not been represented by counsel, nor by anyone else, had not been present, had not been adequately advised of the true nature of the proceeding, and had not learned of her right to a trial by jury until after the order had been entered. This is not analogous to the situation here. The petition leading to the order of surcharge here named attorneys, who must be presumed to be familiar with such proceedings or, at least, to be capable of protecting their interests. The record does not disclose that Behrend and Aronson appeared specially for the purpose of entering its challenge to the court's jurisdiction. To the contrary, Mr. Behrend appeared generally at each of the hearings on the petition. In accordance with 20 Pa.C.S. § 761, jurisdiction had already been obtained, therefore negating the need for a citation. Clearly, the affected parties had notice and an opportunity to be heard. In fact, they were heard at some length as the court's inquiry encompassed eight or nine hearings over approximately sixteen months. For these reasons we find

that, by virtue of Mr. Behrend's appearance, the court had personal jurisdiction over the partnership and the members thereof, Mr. Behrend and Mr. Aronson.[5]

It is not clear, however, whether the fact that the court had jurisdiction over Mr. Behrend impacts the entity taking this appeal. Appellants have correctly argued that in accordance with Pennsylvania's Uniform Partnership Act, 59 Pa.C.S. § 301 et seq., the liability of one partner may, under certain circumstances, be chargeable to the partnership, to other individual partners, and to subsequent partners. They assert that the chancellor took no testimony as to the existence of the firm as identified in the surcharge order, nor on the issue of Mr. Behrend's various associations with firms and partners such that liability could be correctly imposed. The record is, indeed, devoid of such testimony. However, before resolving this problem, we must determine whether the chancellor was correct in assessing a surcharge, for unless the surcharge itself is upheld, no one appealing from it can be considered aggrieved.

■ Having confirmed the jurisdiction of the court with regard to the entry of the original order, we move now to an examination of the alleged error in assessing the surcharge and attendant costs and fees. Our scope of review in orphan's court matters is limited to determining whether its findings are based on competent and credible evidence. *Re Estate of Klein,* 474 Pa. 416, 378 A.2d 1182 (1977). This is especially true where the court *en banc* has reviewed and confirmed these findings. *Cerbo v. Carabello,* 376 Pa. 571, 103 A.2d 908 (1954). We will not reverse absent a clear error of law, *Re Wertman's Estate,* 462 Pa. 195, 340 A.2d 429 (1975), or manifest abuse of discretion, *Estate of Masciantonio,* 392 Pa. 362, 141 A.2d 362 (1958).

5. We further note an alternative basis for the court's jurisdiction. Mr. Behrend, Mr. Aronson and their partnership were acting as counsel for the administrator to whom the original citation had been issued and, by their own admission, were actually administering the estate for him. Their liability cannot be contested for actions taken within the scope of this agency relationship. Therefore, the original citation effectively included counsel for the administrator.

We first address the procedural context out of which the order of surcharge was issued. 20 Pa.C.S. § 762 provides that "the orphan's court division may decide or dispose of any question relating to the administration ... of an estate ... upon the filing of an account *or in any other appropriate proceeding.*" (Emphasis supplied). The questions raised by the petition for an accounting were the proper subject of the hearings held on that petition. The court may, if it chooses, limit its inquiry to an examination of "only the transactions which raise the question to be determined." 20 Pa.C.S. § 762. Therefore, the June 10, 1986 order was entered at an appropriate juncture. Assuming the court committed no abuse of discretion in assessing the surcharge and fees, the final accounting will reflect this transaction much like any other.

We commend the chancellor for his thorough opinion which has provided great guidance to this court. The chancellor found that the firm of Behrend and Aronson breached its fiduciary duty to the estate by bestowing upon itself a payment priority in violation of 20 Pa.C.S. § 3392, by charging the estate with expenses that were not legal and proper expenses of the estate, by negligently performing its duties to the estate and its administrator, including the commingling of funds, and by taking on obligations which impaired its judgment on behalf of the estate. A review of the Statements of Questions Involved in the briefs filed on behalf of the various appellants in this matter reveals that the only argument made to this court with regard to the chancellor's findings, aside from challenging the propriety of the surcharge generally, is that it was error to state that the law firm commingled client funds with general firm revenues. We will therefore limit our review to this finding.

The record shows that funds were received after the decedent's death in settlement of various claims which the decedent had outstanding at the time of her death. It was the practice of the firm to deduct their legal fees, and in one case to make a distribution to the administrator, and then to

list the balance as an asset of the estate. Mr. Aronson's testimony is clear on this point. These funds were originally deposited into Behrend and Aronson's account, the net amount then declared to be an asset of the estate. There was no separate account for the estate, nor did the firm advise the administrator that such an account should be maintained. The administrator did not know that monies were being disbursed in the manner described above.

Mr. Behrend argued to the court that expenses incurred by the firm in undertaking the litigation during the decedent's lifetime were, in essence, expenses of administration, the litigation having been concluded after her death. The court found this to be a distortion of the mandates of the Fiduciary Code. While the firm may be correct that they were entitled to recover their costs and fees, it is clear that, after Mary Albright's death, any monies collected became assets of her estate against which claims could be filed by her creditors, one of which was the law firm.

The deposit of *any* portion of funds received after the decedent's death into a general account of Behrend and Aronson constituted commingling. Because the firm proceeded to deduct their costs and fees before declaring these funds to be assets of the estate, the chancellor's finding with regard to the principle amount due the estate is amply supported by the record and is not in error. We will not disturb it.

■ As to that portion of the order which directs the firm to reimburse the estate for legal fees it improperly collected, with interest, we note that where counsel fails to exercise the required degree of skill, knowledge and diligence, and such negligence results in loss or waste to the estate, the court may impose a surcharge by way of awarding reduced compensation or no compensation at all. *Lohm Estate*, 440 Pa. 268, 269 A.2d 451 (1970). We rely on the thorough discussion by the chancellor of the conduct of the several pieces of litigation for which Behrend and Aronson appropriated its fees and costs which he found to be born of negligence in not timely preserving rights to pursue causes

of action and in proliferating unnecessary and hopeless litigation to resurrect these causes of action. We find ample evidence to support his findings and conclusions regarding this negligence. The record in this case clearly shows flagrant malpractice rather than mere questionable case management. The negligence in handling estate matters is also clear. Further, because of the way in which Behrend and Aronson deducted its costs and fees before assigning any portion of a recovery to the estate as an asset, absent the hearings giving rise to the order of surcharge, the reasonableness of these charges might never have been evaluated: they would not have shown as charges against the estate which could then have been challenged or reviewed by the court in a final accounting.

It is within the sound discretion of the chancellor to determine the reasonableness of such fees. *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968). The chancellor's award was confirmed by the court *en banc*. There is ample competent evidence to support such an award and we find no abuse of discretion. We affirm that portion of the order.

■ Appellants also challenge the propriety of the assessment of $9,250.00 in attorney's fees in the order of June 10, 1986. Of this amount, $1,750.00 was awarded to counsel and co-counsel for the heir originating the petition for citation to the administrator; the remainder of $7,000.00 was awarded to counsel for the estate for handling the litigation against Behrend and Aronson. Appellants contend that, contrary to statutory and interpretive case law authority, these fees were awarded "due to alleged mishandling of a matter [the administration of the estate] other than the one in which attorney's fees were awarded [petition for citation to account for estate assets]." Appellee makes no argument to this court regarding this portion of the order and the chancellor did not, in his opinion, expound on it.

Appellants refer us to 42 Pa.C.S. § 1726 which is the statutory authority for the establishment of taxable costs and which reads, in pertinent part:

The governing authority shall prescribe by general rule the standards governing the imposition and taxation of costs, the litigants who shall bear such costs, and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters. All systems and related personnel shall be bound by such general rules. In prescribing such general rules, the governing authority shall be guided by the following considerations, among others:

    (1) Attorney's fees are not an item of taxable costs except to the extent authorized by section 2503 (relating to right of participants to receive counsel fees).

    (2) The prevailing party should recover his costs from the unsuccessful litigant except where the:

        (i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by of the fund.

        (ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.

        (iii) Application of the rule would work substantial injustice.

It is important to note that while the entire $9,250.00 represents attorney's fees, only $1,750.00 of the award unquestionably comes under sub-section (1) of section 1726. Counsel for the estate, who was awarded $7,000.00, was appointed by the court and, thus, the portion of his fees attributable to representation of the estate are taxable costs pursuant to Pa.R.C.P. 1523.[6] The general rule applicable to the liability for this cost is Pa.R.C.P. 1526 which provides:

    Costs shall follow the decree unless the court directs that they shall be paid in whole or in part by some other party to the action or out of a fund for distribution.

---

**6.** While we are not called upon to pass on the reasonableness of these fees, we would support the tacit finding of the chancellor in this regard. Given the complexity of the case, the numerous hearings, and the time devoted, as evidenced by the seemingly excellent representation provided to the estate by appointed counsel, the fees chargeable as costs appear to be beyond question as to their reasonableness.

Any portion of the $7,000.00 awarded which is properly attributable to counsel's representation of the individual heir is not a taxable cost. However, the award of the $1,750.00 and whatever portion of the $7,000.00 which may be the attorney's fee for representation of the heir would be proper, as provided in 42 Pa.C.S. § 1726(1), under sub-section (7) of 42 Pa.C.S. § 2503 which provides:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

The above section is applicable in this case for the following reasons. The consolidated brief filed on behalf of appellants Behrend, Behrend and Aronson, and the alleged law firm of Behrend, Ernsberger and Moran and endorsed by appellant Aronson concedes "participant" status. With regard to the culpable conduct underlying the sanction, the chancellor stated,

"[I]n conclusion, it is this court's opinion that the Behrend firm breached its fiduciary duty to the Mary Albright (Hayes) Estate in at least four major ways ... Third, the Behrend firm discharged its normal duties of estate administration in a *dilatory* and negligent manner." (emphasis supplied)

It is clear, and appellants agree, that the "matter" concerned is that of administration of the estate. Appellants argue, however, that, because the surcharge arose out of hearings on a petition brought by counsel for the estate, the "matter" out of which the surcharge arose is a different one. They urge this court to find that they are not guilty of dilatory conduct in the context of litigating the petition, and thus that the award of attorney's fees was improper. We find this to be splitting hairs. The estate, as a "matter", was still pending, and the hearings on the petition, which involved accounting for assets of the estate, were in

furtherance of its settlement. Therefore, the court's award of attorney's fees is fairly viewed as a sanction to which the estate, as the prevailing party, is entitled under 42 Pa.C.S. § 2503(7). We therefore find that no error was committed in the award of attorney's fees in the court's order of June 10, 1986.

In sum, the order of surcharge will not be disturbed by this court. However, while the surcharge was proper and the court had jurisdiction over Mr. Behrend, there remains one area of concern. The record is far from clear as to the various associations or partnerships of Mr. Behrend between September of 1983, when Behrend and Aronson were replaced as counsel for the estate, and June of 1986 when the surcharge order was entered. There is no question that up until September of 1983 only Mr. Behrend, Mr. Aronson and their partnership were potentially liable for the surcharge eventually imposed. Because, however, the surcharge was not levied until 1986, there is the possibility that, if Behrend and Aronson's business was continued without liquidation of the partnership affairs, the parties ultimately responsible for payment and the source of the funds for payment may encompass a larger pool. It does not appear from the record that the court was given the information necessary to make this determination. For this reason, while we affirm the order of November 14, 1986, we remand for a hearing on the issue of which parties are properly chargeable under it pursuant to the partnership law of this Commonwealth. The parties are directed to furnish conclusive proof of their partnership arrangements and relevant dates within thirty days of this decision, at which time the chancellor will make a determination as to what parties, as of June 10, 1986, were liable for the surcharge and to what extent any individuals so named, if any, rather than the partnership property, are responsible for payment.

In conclusion, we have disposed of the consolidated appeals as follows:

220

1. No. 156—affirmed.[7]

2. No. 1733—affirmed in part, remanded in part. Jurisdiction is relinquished.

[7] We point out that, because of our decision to remand at No. 1733, the legal interests of B, M, E & T, appellant at No. 156, which it sought to protect in its petition to intervene, will undoubtedly be accorded the scrutiny it desired.