J-A08007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF JOHN SUSICK, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: RONALD I. ROSEN, | |
| Appellant | No. 1518 EDA 2015 |

Appeal from the Order Entered April 28, 2015
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): O.C. No. 886 DE of 2013

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 11, 2016**

Ronald I. Rosen, Esquire, Executor of the Estate of John Susick, deceased, appeals the decision of the orphans' court to reduce the amount of fees that Mr. Rosen paid to the lawyer for the estate, Roger A. Johnsen, Esquire, and to order some of those fees to be returned for distribution to the heirs.  We affirm.

Mr. Susick died testate on February 23, 2010, and, in his will, bequeathed one-half of his residuary estate to his daughter, Peggy Foyle, and the remaining one-half to a woman with whom he lived, Arhontoula Loulis.  Mr. Rosen was named as the executor, and he was issued letters testamentary on May 4, 2011.  Mr. Rosen retained Mr. Johnsen as the estate attorney.  Ms. Loulis died on July 1, 2011, and Nickolas Loulis was appointed

_____
* Retired Senior Judge assigned to the Superior Court.

as administrator of her estate, and then Ms. Foyle died on October 3, 2013, and Deborah V. Young was appointed administratrix of her estate.

Mr. Rosen filed a first and final account on August 29, 2013. The estate assets were valued at $102,851.80. The major asset consisted of the decedent's residence, which was worth $96,904.68. There was also cash and a car. Despite the existence of only three assets to administer, Mr. Rosen paid Mr. Johnsen $34,848 in legal fees, over one-third of the value of the inventoried assets. Mr. Loulis filed objections to the amount of fees paid to the lawyer. At the hearing on the objections, Mr. Johnsen presented time records indicating that he charged $320 per hour for 86.3 of his time spent on this $100,000 estate and that paralegal services of 59.9 hours were charged at $120 per hour.

The orphans' court sustained Mr. Loulis' objection to the amount of fees paid to Mr. Johnsen. It analyzed "the time records and the complexities of this case, together with the testimony and applicable case law," determined that the attorney's fees were excessive, and reduced Mr. Johnsen's compensation to $18,000, nearly eighteen percent of the estate's value. Orphans' Court Opinion, 8/18/15, at 5. Mr. Johnsen was ordered to return $16,848. Mr. Rosen filed exceptions to the ruling, and this appeal followed denial of those exceptions. The following issues are raised herein:

> 1. Whether it was palpable error to rule that Appellant had not met his burden of proof where detailed records of time expended and work performed together with the testimony of

Counsel for the Estate in full explanation of the records was submitted with no evidence offered to contradict the records or testimony and no evidence was presented challenging the reasonableness of the fee.

2. Whether it was an abuse of discretion for the Auditing Judge to find that the problems involved in the administration of the estate were not "other than the usual administration of uncomplicated estates."

3. Whether it was palpable error for the Auditing Judge to limit the examination of counsel for the estate thereby precluding him from testifying as to the condition of the house that constituted the principal asset of the estate and the possible dangers that would likely have occurred had he not assumed responsibility and control of the property.

4. Whether it was an abuse of discretion to refuse to receive photographic evidence of the premises and refuse to consider the communication from the Administrator of the Estate of Peggy Foyle that she approved the account.

Appellant's brief at 4.

Our standard of review of an orphans' court ruling is as follows:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Fuller*, 87 A.3d 330, 333 (Pa.Super. 2014) (citation omitted).

"The determination of the reasonableness of a fiduciary's compensation is left to the sound discretion of the Orphans' Court." *In re Estate of Rees*, 625 A.2d 1203, 1206 (Pa.Super. 1993). Under the Probate, Estates and Fiduciaries Code, "the court shall allow such compensation to the personal representative as shall be reasonable and just, and may calculate such compensation on a graduated percentage." 20 Pa.C.S. § 3537. "[A]ttorney's fees in an estate are based on the reasonable value of the service actually rendered." *Rees*, *supra* at 1206. Attorneys "seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Id*. The orphans' court is authorized "to reduce to a 'reasonable and just' level those fees and commissions claimed by the fiduciary and their counsel." *Id*. We will not overturn an orphans' court's decision to disallow attorney's fees "absent a clear error or an abuse of discretion[.]" *Id*.

The orphans' court herein made the following observation. The fee schedule outlined by *Johnson's Estate*, 4 Fid.Rep.2d 6 (Del. Co. 1983), which is based upon a percentage of the assets under administration, justified attorney's fees of only $9,750 for this estate. Indeed, under that schedule, the amount charged by Mr. Johnsen would have been appropriate for an estate valued at $1,000,000. The schedule in question was

reproduced in *In re Estate of Preston*, 560 A.2d 160, 163 (Pa.Super. 1989)[1]:

**Per col.  Per total**

| | | | |
|---|---|---|---|
| $ 00.01 to $ 25,000.00 | 7% | 1,750.00 | 1,750.00 |
| $ 25,000.01 to $ 50,000.00 | 6% | 1,500.00 | 3,250.00 |
| $ 50,000.01 to $ 100,000.00 | 5% | 2,500.00 | 5,750.00 |
| $ 100,000.01 to $ 200,000.00 | 4% | 4,000.00 | 9,750.00 |
| $ 200,000.01 to $1,000,000.00 | 3% | 24,000.00 | 33,750.00 |

In *Preston*, we ruled that the above chart could not be used to automatically justify attorney's fees that would otherwise be considered unreasonable.  This Court stated that, while "as a matter of convenience the compensation of a fiduciary may be arrived at by way of percentage, the true test is always what the services were actually worth and to award a fair and just compensation therefor[.]" *Id*. at 165 n. 11.  Thus, fees supportable under this schedule can still be considered excessive.

We believe that any difficulties encountered by Mr. Johnsen in the administration of the estate assets were more than adequately accounted for by the fact that he received double the amount recommended under the fee

---

[1] The orphans' court in *In re Johnson's Estate*, 4 Fid.Rep.2d 6 (Pa.Comm.Pl. 1983) indicated that the schedule was approved by the Attorney General as the fees to be charged by attorneys for probating estates. *See* 19A West's Pa. Prac., Probate & Estate Administration § 38:1, comment 1.  However, "the Attorney General's Office subsequently indicated that it has no such guidelines." *Id.* (citing *In re Nix Estate*, 8 Fiduc. Rep. 2d 179 (Pa. C.P. 1988)).

- 5 -

schedule outlined in **Johnson's Estate**, which itself cannot be used to justify unreasonable fees.

After review of the briefs, record, and applicable law, we conclude that the orphans' court did not abuse its discretion in concluding that $18,000, was the reasonable value of the services actually rendered by Mr. Johnsen for an estate that was worth $100,000. The orphans' court considered the difficulties associated with the administration of this estate. It discounted the amount of time spent and the hourly rate charged in light of the estate assets and their value. We therefore reject Mr. Rosen's first three contentions based upon the comprehensive and cogent analysis in the August 18, 2015 opinion authored by the Honorable Matthew D. Carrafiello, Administrative Judge of the Orphans' Court Division of the Court of Common Pleas of Philadelphia County.

Mr. Rosen also contends that it was error to exclude photographs of Mr. Susick's residence at the hearing on the objections. Appellant's brief at 14. This position was not contained in Mr. Rosen's court-ordered Statement of Matters Complained of on Appeal, and it is therefore waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Additionally, the orphans' court considered testimony about the state of the house so any error in this respect was harmless.

Finally, Mr. Rosen suggests that the orphans' court erred in disregarding a communication from Ms. Young, Peggy Foyle's administratrix, whom Mr. Johnsen incorrectly labels an administrator in his brief. Appellant's brief at 15. Ms. Young indicated that she was not dissatisfied with the amount charged by Mr. Johnsen. Mr. Rosen fails to refer us to any case authority suggesting that a layperson's lack of objection to the fees charged by an attorney is a relevant legal consideration. Mr. Loulis objected to the excessive nature of the attorney's fees charged in this matter, and his objection was meritorious under the pertinent law. Hence, there was no error in this regard.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2016

J-A08007 PHILA. MAR 29 2016

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## ORPHANS' COURT DIVISION

### O.C. No. 886 DE of 2013
### Control # 143953

### Estate of JOHN SUSICK, deceased

### OPINION SUR APPEAL

Appellant, Ronald I. Rosen, Esquire, Executor of the Estate of John Susick,
appeals the Trial Court's Denial of his Exceptions to the Court's Amended
Adjudication of the First and Final Account, which sustained Appellee's, Nickolas
Loulis, Administrator of the Estate of Arhontoula Loulis, Objection to the
excessive legal fees charged and paid by the Appellant to his attorney, Roger A.
Johnsen, Esquire.

## Facts and Procedural History

The Decedent, John Susick, died testate on February 23, 2010 leaving one-
half (1/2) of his estate to Peggy Foyle,[1] his daughter, and one-half (1/2) to
Arhontoula Loulis,[2] the woman with whom he lived at the time of his death.

---

[1] Peggy Foyle died on October 3, 2012. Deborah V. Young, was appointed
Administratrix of her estate.

[2] Arhontoula Loulis died on July 1, 2011. Nickolas Loulis was appointed
Administrator of her estate.

1



2013008860542

Letters Testamentary were issued to the Appellant on May 4, 2011 and he retained Mr. Johnsen as his counsel on May 25, 2011.

The First and Final Account was filed on August 29, 2013 and showed an Inventory value of $102,851.80, consisting of the Decedent's residence, valued for account purposes at $96,904.68, cash valued at $1,446.12, and personal property valued at $4,501.00. Personal property included a 1981 Suzuki motorcycle valued at $1.00 (which was subsequently stolen) and decedent's interest in a 2005 Toyota Sedan in poor condition valued at $4,500.00.

The Account showed Disbursements for Fees of $34,848.00 for legal services paid to Appellant's counsel, Roger A. Johnsen, Esquire, which is the subject of this Appeal.

Appellee filed Objections to the Account, specifically to the excessive attorney fees paid to Mr. Johnsen and to wasting estate assets by selling decedent's $4,500.00 interest in the automobile for only $2,500{sic}.

It was not disputed that ownership of the automobile was held one-half by the decedent and the other half by Ms. Loulis. Pursuant to stipulation between the parties, the Trial Court would determine the value of the automobile.

Trial was held on July 22, 2014, at which time Mr. Johnsen testified to the fees charged and the problems he encountered administering the estate, including:

delay in probate due to the difficulty locating Peggy Foyle,[3] an invalid death certificate,[4] a will that was not self-proving,[5] disposing of the tenant occupied residence due its poor condition,[6] and locating the automobile, obtaining keys, storing it, and selling it.[7]

Mr. Johnsen's billing statements were submitted which showed he billed and was paid $34,848.00 for 146.2 hours of legal services provided to the Estate for the time period from 9/29/2010 through 7/16/2012. He testified to a billing rate of $320.00 per hour for 86.3 hours, and a billing rate for services performed by his paralegal of $120.00 per hour for 59.9 hours.

Review of the time records related to the problems Mr. Johnsen identified reveal that prior to being retained as counsel for the estate on 5/25/2011, Mr. Johnsen and his staff had already performed 34.2 hours of services beginning on 9/29/2010, dealing with various matters and including probate of the estate on 5/4/2011. Sale of the decedent's residence on 1/6/2012 and issues related to the tenant comprised 42 hours of time expended by counsel and his paralegal. At trial, testimony focused on the hourly entries totaling $4,877.00 for time expended on the automobile between 3/11/2011 and 3/23/2012, the date the automobile was

---

[3] N.T. p. 28, line 17 - p. 29, line 8.
[4] N.T. p. 12, line 22 - p. 13, line 10.
[5] N.T. p. 27, line 4 - p. 29, line 5.
[6] N.T. p. 35, line 9.
[7] N.T. p. 9, line 19 - p. 27, line 2.

3

ultimately sold. While Mr. Johnsen did not agree that the hours questioned were related solely to the automobile, he admitted "that an inordinate of amount of time was spent."[8] Further review of the time records by the Trial Court showed additional entries relating to the disposition of the automobile for total hours related to that asset being 24.5 and fees received totaling $6,380.00. Mr. Johnsen presented no testimony on the remaining hours expended, relying on his billing records which include: 17.5 hours for preparation of the account, 3.8 hours for preparation of the inheritance tax return, 7 hours concerning the decedent's bank account and refund checks, 2.7 hours regarding the Loulis Estate, and the remaining time on miscellaneous communications and telephone calls with the beneficiaries.

The testimony presented by Appellant concerning the valuation of the automobile was limited to the various offers and counter offers from the parties, and the final sales price of $4,500.00 paid by Peggy Foyle. Neither Appellant nor Mr. Johnsen presented any evidence that they had determined the value of the automobile based on objective evidence such as a blue book valuation, auction value or mechanic's opinion.

The Trial Court found that the value of the automobile was the $4,500.00 sales price, resulting in the Decedent's half interest being $2,250.00.

---

[8] N.T. p. 26, line 11 - p. 27, line 2.

After analyzing the time records and the complexities of this case, together with the testimony and applicable case law, the Court found that attorney fees of $34,848.00 were excessive and reduced Mr. Johnsen's compensation to $18,000 for legal services. Having already paid Mr. Johnsen, Appellant was surcharged in the amount of $16,848.00 and the Court ordered Mr. Johnsen to disgorge the $16,848.00 previously paid to him by Appellant.

The Trial Court sustained Appellee's Objection to the excessive fees, overruled Appellee's Objection to wasting estate assets, entered a surcharge against the Appellant, and ordered the excessive fees be disgorged. The Trial Court issued its Amended Adjudication dated November 17, 2014. Exceptions were filed on December 8, 2014 and denied by the Trial Court on April 24, 2015.

Appellant timely appealed, essentially raising the same issues stated in his Exceptions. The Trial Court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

## Statement of Issues

Appellant's Concise Statement consists of eight (8) issues, each alleging error committed by the Trial Court, however not all are either amenable to a response by the Trial Court or appropriate for judicial review. Many of the issues

5

are repetitive, others are based on faulty assumptions, and others do not productively permit a thoughtful, cogent explanation.

The issues as raised in Appellant's Statement have been rephrased and renumbered so as to enable the Trial Court to fulfill its mandate in explaining the actions taken in the most meaningful and comprehensive fashion, while still addressing all alleged errors. The issues, as restated by the Trial Court, are set forth as follows:

1. DID THE TRIAL COURT ERR IN FINDING THAT THE ATTORNEY FEES PAID BY THE APPELLANT WERE EXCESSIVE UNDER THE CRITERIA ESTABLISHED BY CONTROLLING CASE LAW?

2. DID THE TRIAL COURT FAIL TO CONSIDER ALL TESTIMONY IN FINDING THAT "$4,877.00 IN COUNSEL'S TIME WAS SPENT REGARDING THE DISPOSITION OF THE AUTOMOBILE?"

3. DID THE TRIAL COURT ERR IN IMPOSING A SURCHARGE UPON APPELLANT FOR THE AMOUNT OF ATTORNEY FEES PAID BUT FOUND EXCESSIVE?

## Discussion

1. THE TRIAL COURT CORRECTLY FOUND THE ATTORNEY FEES PAID TO MR. JOHNSEN BY THE APPELLANT WERE EXCESSIVE UNDER THE CONTROLLING LAW.

It is well settled that the factors the Court must consider in determining the reasonableness of an attorney fee are: "the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question." In re LaRocca Estate, 431 Pa. 542, 546, 246 A.2d 337 (1968).

In addition, the Court may consider the fee schedule established by the Johnson Estate, 4 Fid. Rep. 2d 6, 8 (O.C. Del. Co. 1983). Applying the Johnson Estate schedule, a total fee of $34,848.00 would have been appropriate for an estate valued at a substantial $1,000,000. Attorney fees for estates valued between $100,000 to $200,000 under the Johnson Estate schedule would be no higher than $9,750.00.

The burden of proving that the attorney fees charged and paid to Mr. Johnsen were reasonable is upon the Appellant. In re Estate of Sonovick, 373 Pa. Super. 396, 399-400, 541 A.2d 374 (1988), citing Estate of Wanamaker, 314 Pa. Super. 177, 460 A.2d 824, 825 (1983). Further, it is well established that any

7

distribution by a personal representative without court approval and/or the consent of all of the beneficiaries is considered an at risk jeopardy distribution. 20 Pa. C.S. §3532.

The Trial Court permitted Appellant every opportunity to develop an evidentiary record to support his position that the services expended were appropriate, reasonable, and to the benefit of the Estate. The Trial Court is not tasked with the responsibility of developing the evidence; rather it was Appellant's duty to not only develop the evidence, but also to ensure that evidence existed which would meet the requisite burden of proof. The burden of proof rested squarely upon Appellant, under both case law and the Pennsylvania Code of Professional Conduct, 204 Pa. Code. 1.5(a).

### A. The Trial Court applied all of the LaRocca Estate factors in its analysis.

Despite Appellant's allegation that the Trial Court considered only two of the eleven criteria, set forth in In re LaRocca Estate, 431 Pa. 542, 546, 246 A.2d 337 (1968), and failed to consider four factors which he deemed material, the Trial Court carefully considered each of the eleven factors in determining the reasonableness of the attorney fees. While the Trial Court may not have prepared a formal checklist, it did consider the character of the services rendered, the degree

8

of responsibility incurred, the amount of work performed, and the ability of the client to pay a reasonable fee for the services rendered in addition to all the other factors. To suggest the contrary is not supported by a review of the evidence viewed in a light most favorable to Appellant.

Appellant's only witness was Mr. Johnsen, whose testimony demonstrated at length the nature of the services performed, which was not described as arduous or requiring litigation or complicated services necessary in other than the usual administration of uncomplicated estates.

Mr. Johnsen's testimony was so lacking in detail as to deprive the Trial Court of identifying what services would have warranted the fee taken. While Mr. Johnsen's testimony was that he had difficulties which caused a delay in administering decedent's residence because it was occupied by a tenant, Mr. Johnsen's itemized billing shows that Mr. Bird complied with Mr. Johnsen in moving out of the residence, and remained in contact with Mr. Johnsen regarding the status of his move. Neither Mr. Johnsen's invoice nor testimony provided identification of what these difficulties were and the amount of time necessary to remediate them.

Numerous difficulties were encountered in the disposition of decedent's 1/2 interest in the automobile, which was listed on the Account as $4,500. The value of the automobile was the only property in question and pursuant to the parties'

9

stipulation, the Court determined the value to be the $4,500.00 sales price, the result of which was a net loss to the Estate of $2,250.00 for the endeavor.

Delay in Probate was due to the inability to locate witnesses to the decedent's signature. Mr. Johnsen elaborated by explaining that he was required to make phone calls to locate the witnesses, and after two (2) months, he was able to connect with the decedent's daughter, Peggy Foyle.[9] This hardly proves to have been a complex issue, as the delays were not extraordinary in length and the efforts expended were mainly phone calls. Further, there was no testimony from this witness or any other that this estate required services more complex in character than usual in locating witnesses and beneficiaries, or for any other issues encountered. Further, delays alone do not necessarily translate into more complex and/or additional legal fees.

The Trial Court considered the character of the services rendered by Mr. Johnsen, but was not convinced that they represented services which were of such a character as to justify the fee charged, nor did the evidence show why these services performed by him could not have been at least partially performed by his professional staff.

---

[9] N.T. p. 27, line 4 - p. 29, line 8.

The Court considered the total services performed by Mr. Johnsen at a rate of $320 per hour, and those of his paralegal at a rate of $120 per hour.[10] His total combined bill amounted to $34,848 for 146.2 hours of work, largely performed by Mr. Johnsen himself, for an estate with a gross value of $102,852.[11] In reviewing the services performed, the testimony and supporting evidence failed to convince the Trial Court that Mr. Johnsen needed to perform at least a significant portion of the services billed, when the same could have been performed by his paralegal, assistant, or even his secretary. If these services were performed by his paralegal, then the services would have been billed at the paralegal's rate of $120 per hour. If performed by a secretary, then they would not have been billed at all.

Despite Appellant's contention, the Trial Court considered at great length the ability of the client to pay a reasonable fee for the services rendered, and was important in the Trial Court's ultimate decision. The amount of attorney fees was more than one-third of the gross value of the estate, and more than the distributive share paid to either of the two beneficiaries.

The Trial Court recognized that there are "several heirs here and different heirs have added complexities to this matter."[12] Peter Mylonas, Esq., attorney for Argirula Tsakalofas, a beneficiary of the Estate of Arhontoula Loulis, questioned

---

[10] N.T. p. 34, line 11-21.
[11] N.T. p. 43, line 7-25.
[12] N.T. p. 49, line 11-12.

11

the size of attorney fees being approximately 34% of the Estate[13]. Mr. Johnsen's reply: "the math is what it is" was indicative of his posture throughout the proceedings.[14]

Adequate consideration was given to the letter from Deborah V. Young, the Administratrix and beneficiary of the Estate of Peggy Foyle who opposed the Appellee's Objections.[15] The Court notes that Ms. Young was not present at any proceedings. She voiced her opposition in a writing submitted with no indication that she had received advice from her own counsel, and no indication that she was represented at any time during these proceedings. This communication, coming without indication of her motivation and whether her consent was informed, especially being the person charged with delays, raises more questions than it answers.

Under LaRocca Estate, the Trial Court was required to consider the ability to pay a reasonable fee for services rendered. The Trial Court was in full compliance with LaRocca Estate in excluding unreasonable fees when considering and deciding the reasonable fee that was appropriate for payment.

The totality of the evidence presented established that Mr. Johnsen did not perform legal services beyond what would normally be expected in handling an

---

[13] N.T. p. 44, line 16.
[14] N.T. p. 44, line 20.
[15] N.T. p. 4, line 11 - p. 5, line 3.

12

estate of this value and size, nor that he bore more than the usual degree of responsibility in his representation. The evidence of record established that:

a) The real estate of decedent, while having a tenant in occupancy at time of decedent's death, did not require legal proceedings for cessation of his tenancy.

b) The realty was eventually sold with no reported complications.

c) While causing inordinate time and complication, the sale of the estate's 1/2 interest in the automobile did not present a difficult issue, especially for an attorney of Mr. Johnsen's reputation, skill and experience. In reviewing this issue, a question never addressed was why the responsibility was ever assumed, when the Appellant could have moved under the Fiduciary Code to abandon the estate's 1/2 interest at a net gain to estate and everyone involved.

d) Appellant willfully assumed an onerous and avoidable responsibility by making an at risk disbursement to counsel. Without agreement of the beneficiaries, or Court approval, Mr. Johnsen knew, and Appellant, as an attorney, should have known they were assuming the risk they would have to return any amount found excessive.

e) Any responsibility was lessened by, not only having a seasoned attorney representing the Executor, but the Executor himself, who is an attorney of fine repute and long experience.

f) No fund was created.

13

g) Aside from the attorney fees, the results were acceptable.

By utilizing all criteria relevant under LaRocca Estate, the Trial Court was vigilant in assessing any and all evidence to determine whether the sum taken for attorney fees was reasonable. The fact that it could not do so is not due to Trial Court's error, but to Appellant for his failure to provide credible and convincing evidence to support his position.

## 2. THE TRIAL COURT CONSIDERED ALL TESTIMONY IN FINDING THAT "$4,877.00 IN COUNSEL'S TIME WAS SPENT REGARDING THE DISPOSITION OF THE AUTOMOBILE?"

Appellant presented testimony to explain fees charged and the alleged problems encountered by Mr. Johnsen in handling the sale of the automobile. Mr. Johnsen testified that he had difficulty selling the Decedent's automobile in which the Decedent shared a one-half (1/2) interest with Arhontoula Loulis.

On his direct examination of Mr. Johnsen, Counsel for Appellee/Objectant questioned certain amounts billed to the Estate between March 11, 2011 through March 23, 2012,[16] which totaled $4,877.00 pertaining to services in handling the sale of the automobile.

---

[16] N.T. p. 24, line 22 - p. 25, line 17.

14

Mr. Johnsen explained that it took approximately one year for its disposal due to several impeding difficulties. Mr. Johnsen stated that there was ongoing disagreement between the beneficiaries regarding the value of the car, in which Peggy Foyle initially bid $10[17] for the automobile, even though she alleged it was valued at $9,000.[18] Despite the dispute over its value, Mr. Johnsen testified that he did not check the Bluebook value of the automobile.[19] After rejecting the $10 bid, Nikolas Loulis bid $6,500, but then walked away from his offer.[20] It was eventually sold to Peggy Foyle for $4,500.[21]

During this testimony, Mr. Johnsen utilized repeated opportunities to note the billings were not for the automobile solely, but "among other things."[22] However, Mr. Johnsen never fully identified these "other things." The Trial Court never received a satisfying explanation of what "other things" were contained in the automobile portion of his bill.

Mr. Johnsen stated that while he did not "agree that $4,800 was expended strictly on dealing with the automobile... [he did] agree that an inordinate amount

---

[17] N.T. p. 39, line 7.

[18] N.T. p. 17, line 19 - p. 25, line 21.

[19] N.T. p. 42, line 16-18.

[20] N.T. p. 26, line 17-21.

[21] N.T. p. 25, line 18-21.

[22] N.T. p. 15, line 14 & line 19; p. 16, line 4; p. 23, line 4; p. 26, line 12.

of time was spent" in handling the automobile.[23] This issue was not explored

further by Appellant's counsel on cross-examination.

As stated previously, the time records actually show 24.5 hours or $6,380.00

spent related to the automobile. Appellant having failed to provide the Court with

any explanation of the "other things" involved and the value of the decedent's

interest in the automobile having been reduced to $2,250.00, the hours spent is

clearly disproportionate to the value of the asset.


### 3. THE TRIAL COURT DID NOT ERR IN IMPOSING A SURCHARGE UPON APPELLANT FOR THE AMOUNT OF ATTORNEY FEES PAID BUT FOUND EXCESSIVE.

The trial court appropriately surcharged Appellant $16,848.00 for excessive

attorney fees paid to Mr. Johnsen. Based on all of the evidence, the Trial Court was

not convinced that Mr. Johnsen was entitled to the fees charged, and that

Appellant's at risk disbursement properly resulted in a surcharge.

Further, "when reviewing the judgment of the Orphans' Court regarding the

allowance or disallowance of a fiduciary's fees and commissions, [the Appellate

Court] will not interfere with the lower court's decision absent an abuse of

---

[23] N.T. p. 26, line 16.

16

discretion or a "palpable error'." In re Estate of Sonovick, 373 Pa. Super 396, 399-400, 541 A.2d 374.

The Trial Court carefully considered all controlling case law criteria, all evidence submitted to the Court, and provided Appellant the opportunity to prove that the fees charged and paid to Mr. Johnsen were reasonable. Testimony concerning said fees was at best conclusory and devoid of such specificity as to have acquitted Appellant of his burden of proof that said fees were fair and reasonable. Based on the evidence and the Trial Court's consideration of the LaRocca Estate factors, it had no choice but to find that Appellant did not satisfactorily meet this burden, and conclude that the fees were not reasonable in light of the services performed.

Upon finding such fees to be excessive due to Mr. Johnsen's failure to "exercise the required degree of skill, knowledge and diligence, and [the same resulting in such loss] or waste to the estate, the court may impose a surcharge by way of awarding reduced compensation or no compensation at all." In re Estate of Albright, 376 Pa. Super. 201, 545 A.2d 896, 904 (1988); Lohm Estate, 440 Pa. 268, 269 A.2d 451 (1970).

Where the Executor breaches his fiduciary duties in handling the Estate, a surcharge is a means of penalizing such behavior. In re Estate of Dobson, 490 Pa. 476, 417 A.2d 138 (1980). Here, Appellant, himself an attorney, engaged Mr.

Johnsen as counsel to handle the Estate, and paid Mr. Johnsen from the Estate without prior court approval, and without consent of the heirs. Having made a distribution at his own risk, and the Trial Court having found said distribution excessive, thus constituting a breach of fiduciary duty to the Estate, the Trial Court did not err in surcharging Appellant $16,848.

In fashioning the amount of the surcharge, the Trial Court was satisfied that a return of the excessive portion of the fee would be sufficient to satisfy all interests, especially since, except for the issue under appeal, the representation of the Estate was administered effectively.

## Conclusion

This Trial Court takes very seriously the issues of reasonable attorney fees which can lead to intense litigation and go to the heart of delivery of legal services.

The Trial Court entered its final order simply because Appellant failed to justify the fee paid to his counsel. The testimony presented was conclusory and did not substantiate why this fee should be approved. It may have been that Appellant chose to stand on counsel's time sheets, together with counsel's brief testimony, but since neither seriously addressed the issues presented, the Trial Court could not rely thereon to find the entire fee claimed reasonable.

Under these circumstances, the Trial Court awarded only that portion of the fee it found to be reasonable, under all applicable standards. It would have been much preferred to have made a decision on testimony fully addressing the issues, which would have been more fully developed by cross examination. Since that was not the case, the Trial Court entered the decision now under appeal.

For the reasons above stated, it is respectfully submitted that the actions of the Trial Court be affirmed.

CARRAFIELLO, A.J.          8-18-15

Roger A. Johnsen, Esquire
Robert H. Bembry, III, Esquire
Peter George Mylonas, Esquire

19